UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THOMAS KEMPKES,

Plaintiff,

– against –                                                    07-cv-11351 (KMK)

MARY C. MARVIN, individually, GLENN D.
BELLITO, individually, ROBERT J. UNDERHILL,
individually, ANNE W. POORMAN, individually,
WILLIAM H. BARTON, individually, and the VILLAGE
OF BRONXVILLE, N.Y.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

THE AMENDED COMPLAINT ................................................................................1

STANDARD OF REVIEW ......................................................................................3

ARGUMENT ............................................................................................................5

POINT I
    THE AMENDED COMPLAINT IS BARRED BY COLLATERAL
    ESTOPPEL ........................................................................................................5

POINT II
    PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM OF FIRST
    AMENDED RETALIATION ..............................................................................12

        A.    Plaintiff Has Not Engaged In Any Activity Protected
            Under The First Amendment ........................................................12

        B.    The Filing Of *Kempkes I* Was Not A Substantial Motivating Factor
            In Plaintiffs' Termination .............................................................14

POINT III
    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO IMMUNITY ..........16

        A.    The Individual Defendants Are Entitled To
            Absolute Immunity ......................................................................16

        B.    The Individual Defendants Are Entitled To
            Qualified Immunity......................................................................17

CONCLUSION.......................................................................................................18

60467.1 6/16/2008

## THE AMENDED COMPLAINT

The sole allegation asserted by the First Amended Complaint ("Amended Complaint") is that Plaintiff Thomas Kempkes was terminated from his employment as a police officer with the Village of Bronxville ("Village") in retaliation for filing the complaint in a related action — *Kempkes v. Downey, et al.*, 07-CV-1298 (KMK) (GAY) ("*Kempkes I*")[1] — currently pending before this Court.

By way of background, disciplinary charges were preferred against Plaintiff on August 21, 2006. (Miller Aff. Exhibit 1 at ¶ 7). Thereafter, on December 13, 2006, a disciplinary hearing on those charges was held pursuant to New York Unconsolidated Law § 5711-q before the Village of Bronxville Board of Trustees sitting as the Village's Board of Police Commissioners ("Board"). (Miller Aff. Exhibit 1 at ¶ 7; Miller Aff. Exhibit 3 at 1). During the hearing, which was held over three days, Plaintiff was represented by counsel and was provided an opportunity to, and did, cross-examine witnesses and present documentary and testimonial evidence on his behalf. (Miller Aff. Exhibit 3 at 1). On February 21, 2007, while the disciplinary hearing was still pending, Plaintiff filed the initial complaint in *Kempkes I*. (Amend. Compl. ¶ 5; *see* Miller Aff. Exhibit 3 at 2). Following the conclusion of the disciplinary hearing, on November 19, 2007, the Board found Plaintiff guilty of substantially all of the charges preferred against him, and terminated his employment. (Amend. Compl. ¶ 10; Miller Aff. Exhibit 3). The instant litigation then ensued.

As stated in the Amended Complaint, Plaintiff was terminated on November 19, 2007 by way of "a final administrative determination" of the Village's Board of Trustees ("Board").

---

[1] The complaint and amended complaint filed in *Kempkes I* were referenced in and incorporated into the Amended Complaint at ¶¶ 5 and 7, respectively. The amended complaint filed in *Kempkes I* was also annexed to the initial complaint filed in the instant action. (*See* ECF Docket No. 1). The initial complaint filed in *Kempkes I* was annexed to the Amended Complaint filed herein. (*See* ECF Docket No. 14).

(Amend. Compl. ¶ 10). Defendant Mary Marvin is the Village Mayor; Anne Poorman, Glenn Bellitto, Robert Underhill and William Barton, are members of the Board. (*Id.*; Miller Aff. Exhibit 3 at 26). The Amended Complaint, unbecomingly fails to allege, however, that Plaintiff was terminated only after disciplinary charges were preferred against him, a complete evidentiary hearing on those charges was held, and Plaintiff was found guilty of substantially all of the charged misconduct in a unanimous 26 page reasoned decision. (*See* Miller Aff. Exhibit 3).[2]

Plaintiff also fails to inform the Court in the Amended Complaint that a substantial part of his defense to the disciplinary charges was that the charges were preferred against him in retaliation for exercising his First Amendment rights. According to the complaint filed in *Kempkes I*, the disciplinary charges preferred against Plaintiff — *i.e.* the charges on which Plaintiff was found guilty and the Board subsequently terminated his employment — were retaliation for his having spoken out against alleged discriminatory practices of the Bronxville Police Department. (Miller Aff. Exhibit 1 at ¶ 8). In fact, at the disciplinary hearing, Plaintiff's counsel's opening statement was entirely based on this premise (*id.*), and the letter brief submitted by Plaintiff at the close of the disciplinary hearing made only one argument: that the charges and hearing were retaliation for Plaintiff's speech. (Miller Aff. Exhibit 2). Following the hearing and submission of the parties' closing briefs, the Board found there was no evidence that Plaintiff had ever spoken out against any alleged discriminatory practices in the Department before the disciplinary proceeding was instituted. (Miller Aff. Exhibit 3 at 22). The Board also

---

[2] The Board's decision in the disciplinary proceeding was incorporated by reference into the Amended Complaint at ¶ 10. The Court may also take judicial notice of and properly consider the complete record of the disciplinary proceeding on the charges preferred against the Plaintiff. *Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 348 (S.D.N.Y. 2007) (on a 12(b)(6) motion "the Court may take judicial notice of this record of this disciplinary hearing" held against a police officer); *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (taking judicial notice of transcript from disciplinary hearing brought pursuant to Section 75 of the New York State Civil Service Law and a report of the impartial hearing officer that resulted from the hearing).

60467.1 6/16/2008

found that the discriminatory practices about which Plaintiff supposedly complained, were "anything other than the figment of someone's imagination concocted only for purposes of [the] disciplinary proceeding." (Miller Aff. Exhibit 3 at 22).

### STANDARD OF REVIEW

The United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955 (May 21, 2007) controls this case.

It is undisputed that prior to *Twombly*, the applicable standard of review for motions to dismiss was governed by *Conley v. Gibson*, 355 U.S. 41 (1957). In *Twombly*, however, the United States Supreme Court "explicitly disavowed the oft-quoted statement in *Conley*...'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007) (explaining the implications of *Twombly* on "the standard for assessing the adequacy of pleadings"). Ringing the death knell for *Conley*, the *Twombly* Court held that the "no set of facts" language "has earned its retirement" and "is best forgotten." *Twombly*, 127 S. Ct. at 1969.

In *Conley*'s place, the Court announced a new standard by which courts should adjudge the adequacy of pleadings. Now, "[t]o survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of New York*, 2008 WL 313795 (2d Cir. 2008) *quoting Twombly*, 127 S. Ct. at 1974. As the Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral

3

and the factually suggestive … must be crossed to enter the realm of plausible liability." *Id.* at 1965, 1966 n. 5; *Blanco v. Brogan*, 2007 U.S. Dist. Lexis 86890, *5 (S.D.N.Y. 2007) ("the Plaintiff must allege some facts that support the elements of the claim alleged, in order to defeat [a motion to dismiss]"). Thus, the new governing standard is one of "plausibility," not conclusory speculation. *Twombly*, 127 S. Ct. at 1968.

Since this new standard has been strictly applied in employment discrimination cases, it governs this case. *See, e.g.*, *Ruotolo v. City of New York*, 2008 WL 313795 (2d Cir. 2008) (citing *Twombly* as applicable standard and affirming dismissal of retaliation claim on a 12(b)(6) motion); *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, *5 (S.D.N.Y. 2007) (dismissing retaliation claim on a motion to dismiss in light of *Twombly* because Plaintiff "has not 'amplif[ied] his claim with some factual allegation in those contexts where some amplification is needed to render the claim plausible.'"); *Blanco*, 2007 U.S. Dist. Lexis 86890 at *6-8 (dismissing conclusory sex-based discrimination claims against police chief and municipal employer brought by police officer); *see also Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9-10 (1st Cir. 2007) (citing *Twombly* and affirming dismissal of wrongful demotion claim where allegations in complaint were too speculative to draw inference of discrimination).

As will be demonstrated below, the Amended Complaint in this case is completely devoid of any allegations that push it across the line of pure speculation and into the realm of plausibility. It must therefore be dismissed. *See Twombly*, 127 S. Ct. at 1973 n. 14 ("the complaint warranted dismissal because it failed *in toto* to render Plaintiffs' entitlement to relief plausible").

4

# ARGUMENT

## POINT I

### THE AMENDED COMPLAINT IS BARRED BY COLLATERAL ESTOPPEL

After holding a full evidentiary hearing on the disciplinary charges preferred against Plaintiff, the Board, in a 26 page reasoned decision, found Plaintiff guilty of multiple charges of misconduct and terminated Plaintiff's employment as a police officer with the Village of Bronxville. During the hearing Plaintiff specifically raised the issue of First Amendment retaliation —counsel's argument at opening and closing of the disciplinary hearing was substantially based on the exact issue — and the issue was specifically adjudicated by the Board and found to be completely without merit in its decision. Consequently plaintiff is barred from re-litigating that very same issue herein. *See, e.g., Dolan v. Roth*, 325 F. Supp. 2d 122 (N.D.N.Y. 2004), *aff'd*, 170 Fed. Appx. 743 (2d Cir. 2006); *Burkybile v. Bd. of Educ. of Hastings-on-Hudson*, 411 F.3d 306, 310 (2d Cir. 2005); *DeCintio v. Westchester County*, 821 F.2d 111 (2d Cir. 1987); *Marden v. Dinin*, 22 F. Supp. 2d 180 (S.D.N.Y. 1998).

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state." *Burkybile v. Bd. of Educ. of Hastings-on-Hudson*, 411 F.3d 306, 310 (2d Cir. 2005). Although administrative proceedings are not state-court judgments, "in federal actions based on 42 U.S.C. § 1983, state administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state." *Burkybile*, 411 F.3d at 310 *citing Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986).[3]

---

[3] During the May 8, 2008 pre-motion conference, Your Honor inquired as to why administrative proceedings would be preclusive in claims brought under Section 1983, but not in cases brought under Title VII of the Civil Rights Act of 1964. In *University of Tennessee v. Elliott*, the U.S. Supreme Court explained the reason for this distinction is that in enacting Title VII, "Congress did not intend unreviewed state administrative proceedings to have preclusive

Under New York law, collateral estoppel (also known as issue preclusion) applies when two basic conditions are met: (1) the issue sought to be precluded is identical to a material issue necessarily decided by a prior proceeding; and (2) the party against whom collateral estoppel is asserted had a full and fair opportunity to contest this issue in the prior proceeding. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823 (1984); *Schwartz v. Public Adm'r of County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955 (1969). "When the doctrine of collateral estoppel is to be applied to the determinations of administrative agencies, New York courts additionally require the agency's determination be 'quasi-judicial' in character." *Doe v. Pfrommer*, 148 F.3d 73, 79 (2d Cir. 1998); *accord Burkybile*, 411 F.3d at 310, 312.

As for establishing the identity of issue necessary for collateral estoppel to apply, "New York law requires only that the issue have [*sic*] been properly raised by the pleadings *or otherwise placed in issue* and actually determined in the prior proceeding." *Richardson v. City of New York*, 2004 WL 325631, *2 (S.D.N.Y. 2004) (emphasis added; internal quotations and

---

effect on Title VII claims." 478 U.S. 788 (1986); *accord DeCintio v. Westchester County Med. Center*, 821 F.2d 111, 114-17 (2d Cir. 1987). By its terms, Title VII requires potential litigants to first raise their claims with the U.S. Equal Employment Opportunity Commission, which must, in its investigation of claims, give "*substantial weight* to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law." *Id.* at 795-96 (emphasis added; alteration in original). The Court therefore held that "it would make little sense for Congress to write such a provision if state agency findings were entitled to *preclusive effect* in Title VII actions in federal court." *Id.* (emphasis added). "Since it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court," it is not "plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 470 n. 7 (1982). On the contrary, the Court held that "nothing in the language of § 1983 remotely expresses any congressional intent to contravene the common-law rules of preclusion or to repeal the express statutory requirements of the predecessor of 28 U.S.C. § 1738. ... Moreover, the legislative history of § 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion." *Univ. of Tenn.*, 478 U.S. at 797 *quoting Allen v. McCurry*, 449 U.S. 90, 97-98 (1980). The Court thus held that absent a showing of contrary Congressional intent, "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact before it which the parties have had adequate opportunity to litigate,' ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799 *quoting U.S. v. Utah Construction & Mining Co.*, 384 U.S. 394, 422 (1966). Administrative proceedings therefore can have preclusive effect in claims brought under Section 1983 even though the same is not true for Title VII claims.

6

citations omitted) *citing Halyalkar v. Bd. of Regents*, 72 N.Y.2d 261, 268, 532 N.Y.S.2d 85

(1988). Once this requirement has been satisfied, "the opponent of collateral estoppel bear[s] the

burden of establishing that he did not have a full and fair opportunity" to litigate the issue in the

prior proceeding. *Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 503 472 N.Y.S.2d 97 (2d

Dep't 1984); *Schwartz v. Public Adm'r of the County of Bronx*, 24 N.Y.2d 65, 73, 298 N.Y.S.2d

955 (1969).

      Moreover, as the New York Court of Appeals has held:

> The doctrine of collateral estoppel … precludes a party from
> relitigating in a subsequent action or proceeding an issue clearly
> raised in a prior action or proceeding and decided against that party
> …, whether or not the tribunals or causes of action are the same.

*Ryan*, 62 N.Y.2d at 500. Thus, where an issue of fact has been necessarily decided in one

proceeding, that issue cannot be relitigated in a subsequent proceeding simply because the

plaintiff frames his claim under a different legal theory or cause of action. *Beharry v. M.T.A.

New York City Transit Auth.*, 1999 WL 151671, *6 (E.D.N.Y. 1999) ("[O]nce a certain set of

facts has been determined in a proceeding, those facts cannot be challenged even when a

subsequent proceeding attempts to apply a new legal theory to those facts.").

      There can be no question in this case that Plaintiff specifically raised the determinative

issue of First Amendment retaliation in the prior disciplinary proceeding. *See Dolan v. Roth*, 325

F. Supp. 2d 122, 135 (N.D.N.Y. 2004), *aff'd*, 170 Fed. Appx. 743 (2d Cir. 2006). Indeed, in his

opening statement Plaintiff's counsel put the issue squarely before the Board:

> I think the reason he [Plaintiff] is honored to be charged as he is, is
> because he is disliked and is being treated differently than others
> for a number of reasons. One, he has repeatedly expressed his
> concern over his tenure … that the police department is
> systematically discriminating on gender [and race].

7

(Miller Aff. Exhibit 1 at ¶ 8).  Moreover, as demonstrated by counsel's closing statement —

wherein *Kempkes I* was expressly referenced — the argument that the disciplinary proceeding

was being pursued in retaliation for Kempkes' alleged speech as stated above was specifically

put before the Board for consideration:

> By way of closing statement on behalf of Thomas Kempkes[,] I
> refer the Village Board to: i) my opening statement in the
> disciplinary; ii) my client's letter to the individual Board members
> which was marked as an exhibit at the hearing;[4] *and the pending*
> *federal civil rights complaint.*
>
> In that connection I have zero confidence that municipal corporate
> officials such as your clients will be fair in disposing of this matter.
> They manifestly could care less that the Police Department under
> Downey's tenure was overtly racist in enforcing the law (["Driving
> While Black"], ["Driving While Hispanic"]), and racist/sexist with
> respect to staffing (two token Blacks, no females ever, no Jews, no
> Hispanics). Against that background of condoned bigotry and a
> total lack of respect for civil rights generally, there appears no
> likelihood that the Board members would be likely to comprehend,
> much less accord my client, Due Process.

(Miller Aff. Exhibit 2 (emphasis and footnote added)).

Despite the foregoing, the Board expressly determined that Plaintiff did *not* engage in any

of the alleged speech prior to the charges and disciplinary hearing as he claimed, and that the

disciplinary proceeding was not retaliation for Plaintiff's speech.  As stated within the written

decision on the disciplinary charges:

> In his opening statement to the Board on the first day of the
> disciplinary hearing on December 13, 2006, Mr. Lovett on behalf
> of Officer Kempkes claimed that the disciplinary matter is related
> to concerns Officer Kempkes has purportedly expressed about
> gender, national origin and racial discrimination in employment
> practices in the Police department. Mr. Lovett also claimed that the
> disciplinary charges are related to concerns Officer Kempkes has
> purportedly expressed about national origin and racial
> discrimination in law enforcement actions taken by the Police
> Department. Mr. Lovett also suggested that Officer Kempkes was

---

[4] This letter is restated in its entirety at ¶9 of the Amended Complaint filed in *Kempkes I*. (*See* Miller Aff. Exhibit 1).

8

the subject of discipline because he had expressed concerns about health and safety based on purported inaction on and/or cover up of misconduct committed by various other officers in the Police Department.

> *There was no evidence provided to the Board showing in any manner that Officer Kempkes had expressed any of the concerns claimed by Mr. Lovett or to show any connection between the purported concerns and the disciplinary charges. Further, there was nothing produced during the hearing other than Mr. Lovett's words to show that any of the matters about which Officer Kempkes has purportedly expressed concern are anything other than the figment of someone's imagination concocted only for purposes of this disciplinary proceeding.*

(Miller Aff. Exhibit 3 at 22 (emphasis added; footnote omitted)).  Without having engaged in this protected First Amendment activity, the disciplinary proceedings cannot have been pursued against Plaintiff for engaging in such non-existent activity. Put another way, Plaintiff did not suffer any First Amendment retaliation as a result of the disciplinary proceedings.

Finally, there can be no question that the disciplinary proceeding in which this decision was rendered was a "quasi-judicial" administrative proceeding. *See Burkybile*, 411 F.3d at 311-12; *Ryan*, 62 N.Y.2d at 499 ("...the doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies, when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law." (internal citations omitted)); *Allied Chemical v. Niagara Mohawk Power Corp.*, 72 N.Y.2d 271, 276, 532 N.Y.S.2d 230 (1988) ("First, the court must make the threshold determination that the agency has the statutory authority to act adjudicatively. If the agency has such authority, the court must then ascertain whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively,

so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired.").

Pursuant to Section 5711-q of the New York Unconsolidated Laws, the Board was authorized to "investigate[], examine[], hear[] and determine[]" the charges of misconduct preferred against Plaintiff, and, upon conducting a "hearing or trial" on the charges the Board had statutory authority to assess a penalty up to and including termination for any proven misconduct. N.Y. Unconsol. L. § 5711-q(9). Indeed, over three days of hearing, the Board was presented with documentary evidence and sworn testimony from five witnesses. (*See* Miller Aff. Exhibit 1 at 1). Plaintiff, who was represented by counsel throughout, called witnesses to testify on his behalf and engaged in cross-examination of other witnesses. (*Id.*). A full record of the hearing was produced (*id.* at 1-2), and the Board's ultimate decision on the charges and penalty was reviewable by way of Article 78 of the New York Civil Practice Law and Rules. *See* N.Y. Unconsol. L. § 5711-q(10). Inasmuch as Plaintiff has not challenged the Board's decision via Article 78, the Board's determination is "final" and, consequently, is preclusive here. *See Ryan*, 62 N.Y.2d at 499 ("[Quasi-judicial administrative] determinations, when final, become conclusive and binding on the courts."); *Bernstein v. Birch Wathen School*, 71 A.D.2d 129, 132 (1st Dep't 1979), *aff'd*, 51 N.Y.2d 932, 434 N.Y.S.2d 994 (1980) (giving preclusive effect to an administrative law judge's decision where it had not been appealed as provided for under the Labor Law).

Because the Board already determined that the disciplinary proceeding bore no connection to Plaintiff's alleged but non-existent speech, and therefore that the proceeding was *not* retaliatory, Plaintiff cannot now argue that the conclusion of that disciplinary proceeding — *i.e.*, his termination — was retaliatory. *See DeCintio v. Westchester County*, 821 F.2d 111 (2d

60467.1 6/16/2008

Cir. 1987) (plaintiff precluded from re-litigating retaliatory nature of his discharge following a disciplinary proceeding held pursuant to N.Y. Civil Service Law § 75); *Marden v. Dinin*, 22 F. Supp. 2d 180 (S.D.N.Y. 1998) (police chief terminated as a result of disciplinary proceeding held pursuant to the Westchester County Police Act was collaterally estopped from re-litigating the First Amendment retaliatory nature of his termination in federal action where issue was addressed during the disciplinary proceeding and subsequent Article 78 proceeding); *Richardson*, 2004 WL 325631 (plaintiff precluded from re-litigating alleged discriminatory motivation behind his termination where plaintiff was terminated after he was convicted on disciplinary charges where issue addressed in an Article 78 proceeding challenging his termination).

In order to circumvent the inevitable preclusion of the instant retaliation claim by the Board's determination, Plaintiff unbecomingly asserts that the Board's decision to terminate him was made in retaliation for filing *Kempkes I.* Plaintiff cannot, however, escape the simple fact that the Board's decision to terminate Plaintiff's employment as a penalty for his proven misconduct was nothing more than the culmination of the preferred disciplinary charges and hearing held thereon. Consequently, the Court should recognize "the strong public policy in economizing the use of judicial resources by avoiding relitigation" of the retaliatory nature of the disciplinary proceeding herein. *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998).

In short, under binding Second Circuit precedent, this action, in its entirety, is barred by collateral estoppel. The Amended Complaint must therefore be dismissed. *See, e.g., Burkybile*, 411 F.3d 306; *DeCintio*, 821 F.2d 111; *Marden*, 22 F. Supp. 2d 180.

60467.1 6/16/2008

## POINT II

### PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM OF FIRST AMENDMENT RETALIATION

Even if, *arguendo*, this action is not barred by collateral estoppel, the Amended Complaint must nonetheless be dismissed because Plaintiff has failed to allege any plausible claim of First Amendment retaliation.

**A.    Plaintiff Has Not Engaged In Any Activity Protected Under The First Amendment**

It is axiomatic that before an individual can be retaliated against for having engaged in First Amendment activity, that individual must have actually engaged in activity protected by the First Amendment. *See, e.g., Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000) (setting out the elements of a First Amendment retaliation claim, the first being "that the speech at issue was protected"). If, as is the case here, a First Amendment retaliation claim is based on a prior lawsuit, that lawsuit must have touched upon a matter of public concern to subsequently raise an actionable retaliation claim. *See Cobb v. Pozzi*, 363 F.3d 89 105-06 (2d Cir. 2003). Inasmuch as the Amended Complaint alleges Plaintiff was retaliated against for filing *Kempkes I*, it effectively concedes his claim since Plaintiff was not speaking on a matter of public concern when he filed that lawsuit. *See Ruotolo v. City of New York*, 514 F.3d 184, 188-89 (2d Cir. 2008) (First Amendment retaliation claim "must fail" where basis of claim is the filing of a lawsuit brought to redress personal employment grievances and therefore was not speech on a matter of public concern); *Baker v. Mecklenburg County*, 853 F. Supp. 889 (W.D.N.C. 1994) ("Plaintiff's [prior] lawsuit was not a protected act of expression since it was essentially brought by him as an employee seeking to protect his rights as an employee, not as a citizen vindicating the interest of his fellow citizens. Therefore, any retaliation for that lawsuit was not retaliation prohibited by the First Amendment's protection of free expression."); *de Silva v. New York City Transit Auth.*,

1999 WL 1288683, *17 (E.D.N.Y. 1999) (employee's filing of a charge of discrimination with the New York State Division of Human Rights was not speech on a matter of public concern and therefore not protected by the First Amendment).

Rather, *Kempkes I* and the alleged factual bases upon which it lies — *i.e.*, revocation of his disability benefits, preferral of disciplinary charges against him, a reduction in his salary, and a denial of health benefits to his spouse — merely amount to Plaintiff's airing of his own particularized, private grievances regarding his employment with the Bronxville Police Department. *See Ruotolo*, 514 F.3d at 187, 190 (lawsuit alleging lost income and pension benefits and seeking to expunge "retaliatory disciplinary charges and performance reviews" from plaintiff's employment record, did not address matters of public concern). Inasmuch as that lawsuit seeks redress for Plaintiff for the alleged actions taken specifically against him, Plaintiff's filing of *Kempkes I* does not constitute speech on a matter of public concern. *Id.* at 190 ("Because [plaintiff's] lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim."); *see also Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999) (courts "must focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."); *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (1991) (physician's complaints were not a matter of public concern "where her primary aim was to protect her own reputation" not the public welfare); *Bates v. Bigger*, 192 F. Supp. 2d 160 (S.D.N.Y. 2002) (holding employees' complaints involving "personal grievances relating to their own employment interests" were not matters of public concern).

13

Simply put, in filing *Kempkes I*, Plaintiff did not engage in activity protected by the First Amendment, and, consequently, the instant complaint must be dismissed. *Ruotolo*, 514 F.3d at 190.

**B.    The Filing Of *Kempkes I* Was Not A Substantial Motivating Factor In Plaintiffs' Termination**

Plaintiff here claims that he was terminated in retaliation for filing *Kempkes I*. His claim, however, is patently inconsistent with his claims in *Kempkes I*. Indeed, the allegations in *Kempkes I*, which are judicial admissions on the part of the Plaintiff, demonstrate that he would have been terminated even had he not filed that lawsuit. The thrust of *Kempkes I* is that the Board already was determined to terminate him for his alleged protected prior speech. Plaintiff cannot, as a matter of law, now state a First Amendment retaliation claim herein. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (in analyzing a First Amendment retaliation claim the district court should have looked at whether the employer would have reached the same decisions even in the absence of the protected speech). The Board's determination finding him guilty of substantially all of the charged misconduct demonstrates that Kempkes would have been terminated for his proven misconduct regardless of his filing of *Kempkes I*.

Moreover, Plaintiff's retaliation claim fails as there can be no causal connection between the filing of *Kempkes I* and Plaintiff's termination. It is well settled that timing alone is generally not enough to establish a causal connection between protected activity and an adverse employment action. *See, e.g., Reyes v. City University of New York*, 2007 WL 2186961, *5-6 (S.D.N.Y. 2007) (dismissing retaliation claim where "Plaintiff [did] not plead facts tending to show any direct retaliatory animus, [and] the indirect temporal proximity approach, standing alone, is not enough to save the claim."). As the United Supreme Court has explained, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected

14

activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). Indeed, as Judge McMahon of this Court has stated, "[i]t is well settled in this Circuit that 'the protected activity [must be] followed closely by discriminatory treatment,' and it is equally well settled that more than three or four months does not qualify as 'follow[ing] closely.'" *Reyes*, 2007 WL 2186961 at *5.

    *Kempkes I* was filed on February 21, 2007. The decision terminating Plaintiff's employment was made on November 19, 2007, nearly nine months later, and, incidentally, after the Board had found him guilty of misconduct. This nine month time gap in time is simply too great to establish a causal connection between the protected activity alleged in the instant action and *Kempkes I. See, e.g., O'Reilly v. Consol. Edison*, 173 Fed. Appx. 20 (2d Cir. 2006) (three month gap insufficient); *Hollander v. Am. Cynamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (same); *Donlon v. Group Health Inc.*, 2001 WL 111220, *3 (S.D.N.Y. 2001) ("Neither is the lapse of four months … enough to imply a causal connection."); *Cobian v. City of New York*, 2000 U.S. Dist. LEXIS 17479 (S.D.N.Y. 2000) (holding that plaintiff failed to establish causal connection between protected activity and adverse employment action which took place after four month lag); *James v. Newsweek*, 1999 U.S. Dist. LEXIS 15588 (S.D.N.Y. 1999) (no causation where "there was at least a four-month gap between the protected activity and the adverse actions"), *aff'd*, 213 F.3d 626 (2d Cir. 2000), *cert. denied*, 531 U.S. 926 (2000); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation").

## POINT III

## THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO IMMUNITY

**A.    The Individual Defendants Are Entitled To Absolute Immunity**

Even if, *arguendo*, Plaintiff was somehow able to overcome the pleading deficiencies, the individual Defendants are nonetheless protected against his claims by absolute immunity. *See, e.g., Magilton v. Tocco*, 379 F. Supp. 2d 495 (S.D.N.Y. 2005) ("Under the law in this Circuit, a municipal official is entitled to absolute immunity for his decision to initiate administrative disciplinary proceedings against an employee.") *citing Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992) (municipal officials entitled to absolute immunity for decision to authorize lawsuit against an employee), *cert. denied*, 506 U.S. 819 (1992); *Verbeek v. Teller*, 158 F. Supp. 2d 267, 282 (E.D.N.Y. 2001) ("Contrary to [Plaintiff's] arguments, the acts [of the individual trustees] in approving the prosecution of the charges and then imposing punishment, i.e., accepting the hearing officer's recommendations, are entitled to absolute immunity."); *Capone v. Patchogue-Medford Sch. Dist.*, 2006 U.S. Dist. LEXIS 96016, *11 (E.D.N.Y. 2006) (same); *Sangirardi v. Village of Stickney*, 1999 WL 1045223, *2-3 (N.D. Ill. 1999) (same); *Gomes v. Univ. of Maine System*, 365 F. Supp. 2d 6, 42 (D. Me. 2005) (members of Student Conduct Code Committee "'absolutely immune' from personal civil liability" for conduct related to student disciplinary proceeding).[5]

---

[5] This Court previously held in *Kempkes I* that the Defendants herein are entitled to absolute legislative immunity from Section 1983 actions for their legislative actions. *Kempkes v. Downey*, 2008 U.S. Dist. LEXIS 25981, *24 (S.D.N.Y. 2008) (Karas, J.) *citing, e.g., Zdziebloski v. Town of E. Greenbush, N.Y.*, 336 F. Supp. 2d 194, 203 (N.D.N.Y. 2004) (town board members entitled to absolute legislative immunity for vote to layoff plaintiff).

60467.1 6/16/2008

**B.    The Individual Defendants Are Entitled To Qualified Immunity[6]**

The individual Defendants are also entitled to qualified immunity because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In order to show an entitlement to qualified immunity, Defendants "must satisfy one of two tests: either that [their] conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that [their] acts did not violate the[ir] clearly established rights." *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990); *accord Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007). "Stated differently, an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007).

While Defendants do not dispute that it is clearly established that a public employee cannot be retaliated against for speaking out on matters of public concern, the actions taken by the individual defendants' in this case were objectively reasonable in light of the known circumstances. The Board was presented with an extensive record replete with evidence of Plaintiffs' insubordination and violation of departmental rules. The Board had an obligation to take disciplinary action against such a police officer who had repeatedly demonstrated his willingness to place his personal interests above those responsibilities entrusted to him by the department.  Individual board members must be entitled to make reasonable findings based on the evidence presented without fear that a plaintiff's wholly baseless and unsubstantiated

---

[6] Questions of qualified immunity should be resolved at the earliest possible stage of litigation, "either in a motion to dismiss, or, after limited discovery on a limited question of objective reasonableness of the challenged action, in a motion for summary judgment." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

60467.1 6/16/2008

conclusory allegations could result in personal liability, or, minimally, protracted and expensive litigation. To hold otherwise would effectively immunize a plaintiff from being disciplined for his proven misconduct.

## CONCLUSION

Plaintiff's employment was terminated after he was found guilty of misconduct following a full evidentiary hearing. Plaintiff may not now wield the First Amendment as a sword to evade the consequences of his proven misconduct.

For all of the foregoing reasons, the First Amended Complaint should be dismissed in its entirety,

Dated:   Garden City New York
         June 16, 2008

Respectfully submitted,

BOND SCHOENECK & KING, PLLC

By: _____
      Howard M. Miller (HM4538)
      *Attorneys for Defendants*
      1399 Franklin Avenue, Suite 200
      Garden City, New York 11530
      (516) 267-6300
      hmiller@bsk.com

Of Counsel:
      Terry O'Neil
      Jessica C. Satriano

18

60467.1 6/16/2008

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service, and/or the individual rules of practice of District Court Judge Kenneth M. Karas upon the following parties and participants:

        LOVETT & GOULD, LLP
        222 Bloomingdale Road
        White Plains, New York 10605

        _____
        Howard M. Miller (HMM4538)
        BOND, SCHOENECK & KING, PLLC
        *Attorneys for Defendants*
        1399 Franklin Avenue, Suite 200
        Garden City, New York 11530
        (516) 267-6300; hmiller@bsk.com