UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THOMAS KEMPKES,

                           Plaintiff,                07 Civ. 11351(KMK)

          -against-

MARY C. MARVIN, individually,
ROBERT J. UNDERHILL, individually,
ANNE W. POORMAN, individually,
WILLIAM H. BARTON, individually,
and the VILLAGE OF BRONXVILLE, N.Y.,

                      Defendants.
-------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

LOVETT & GOULD, LLP
Attorneys for Plaintiff
222 Bloomingdale Road
White Plains, New York 10605
(914) 428-8401

## Table of Contents

**Page**

Preliminary Statement................................................................................1

Background.................................................................................................1

Standard Principles....................................................................................7

POINT I
    DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST
    AMENDMENT CLAIM SHOULD BE DENIED IN ALL RESPECTS............7

    A.  Plaintiff engaged in protected activity................................................7

    B.  A causal connection is amply alleged................................................9

POINT II
    THE DISCIPLINARY PROCEEDING DOES NOT BAR THE
    INSTANT LAWSUIT..........................................................................11

    A.  The Plaintiff's current claims were not actually litigated and
    necessarily decided in the administrative forum......................................11

    B.  Plaintiff was never provided a full and fair opportunity to litigate
    his constitutional law claims in the administrative context..........................12

    C.  Defendants' reliance here again on DeCinto and Burkybile is
    misplaced ........................................................................................16

POINT III
    DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE OR
    QUALIFIED IMMUITY .....................................................................18

    A.  The Defendant Board members are not entitled to absolute
    immunity..........................................................................................18

    B.  The individual Defendants are not entitled to qualified immunity............21

Conclusion.............................................................................................23

## PRELIMINARY STATEMENT

Plaintiff Thomas Kempkes, by his attorneys Lovett & Gould, LLP, submits this opposition to Defendants' pre-discovery motion to dismiss the complaint pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure. This is an action for compensatory and punitive damages, proximately resulting from Defendants' conduct as engaged in under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed him by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## BACKGROUND

Plaintiff was employed as a permanent, tenured Police Officer by the Defendant Village at all times relevant to this complaint, except as otherwise expressly indicated (07-Civ 11351 First Amended Complaint (hereinafter "Kempkes II"), annexed to the Affidavit of Howard Miller (hereinafter "Miller Aff.") as Exhibit 4 ¶4).

Defendant Village of Bronxville (hereinafter "Village") is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State. The Village's duly constituted legislative body, its so-called Board of Trustees (hereinafter "Board"), is comprised of Defendants Mary C. Marvin, Glenn D. Bellito, Robert J. Underhill, Anne W. Poorman, and William H. Barton, each of whom (hereinafter collectively referred to as the "Board") is sued in his/her individual and personal capacities only. Collectively the members of the Board also serve, by reason of their election to the Board, as members of the Village's Board of Police Commissioners. As Commissioners they establish the official policies, customs and practices of the

1

Village Police Department, and have plenary power to discipline sworn members of the Department, in accordance with Section 5711q of the New York State Unconsolidated Laws (Kempkes II ¶4, Miller Aff. Ex. 4)

On February 21, 2007, Plaintiff filed in this Court <u>Kempkes v. Downey</u>, 07 Civ. 01298 (KMK/GAY)(hereinafter "<u>Kempkes I</u>"), alleging First and Fourteenth Amendment claims (Kempkes II ¶5, Miller Aff. Ex. 4)

On March 13, 2007, Defendants moved to dismiss the complaint pursuant to FRCP 12 (Kempkes II ¶6, Miller Aff. Ex. 4).

Plaintiff then served an amended complaint on March 27, 2007 adding Marvin, Bellito, Underhill, Poorman and Barton as Defendants (Kempkes II ¶7, Miller Aff. Ex. 4) Miller Aff. Ex. 4 ¶ 7).

The allegations in Kempkes I are in relevant part:

a) Defendants unilaterally revoked Plaintiff's 207-c status and terminated his Section 207-c benefits without having accorded him a pre-deprivation Due Process hearing (Kempkes I ¶6, Miller Aff Ex. 1).

b) On or about August 21, 2006, Brian M. Downey, the Chief of Police of the Village preferred disciplinary charges against Plaintiff relating to Plaintiff's alleged failure to remain home, while injured, on Thursday July 6, 2006 (Kempkes I ¶¶6, 7, Miller Aff. Ex. 1)

c) In that connection and during Plaintiff's opening statement at the hearing he urged, through counsel:

> "I think the reason he [Plaintiff] is honored to be charged as he is,
> is because he is disliked and is being treated differently than others for

a number of reasons. One, he has repeatedly expressed his concern over

his tenure. . .that the police department is systematically discriminating

based on gender.

You don't have, you never had a single female police officer in the

history of the Village of Bronxville. He has expressed, repeatedly, his

concern that the Village Police Department has a racial bias. You do not

have, nor ever had a[n] Hispanic member of the police department. He

has repeatedly expressed his concern intradepartmentally about

racial bias because for years, you ha[d] one token black officer and now

you have two token Blacks.

He has expressed his concern that the Chief of Police and his

immediate [predecessor]. . .have put the public health and safety at risk by

sending [Plaintiff] out on patrol in a car where they knew he was disabled

and couldn't possibly intercede if somebody were in the act of committing

a robbery, or a burglary, or a rape. He expressed concern that that was

putting people at risk and other officers at risk. . .He expressed concern

that the Chief of Police had provided a bed or a cot for a police Sergeant

who was so drugged up on prescription medication that he's allowed to

sleep while on desk duty and get paid full salary.

He's expressed concern that the individual involved in [this set of

disciplinary charges], Lieutenant Satriale. . .has endangered the welfare of

a minor, taking an under-aged youth drinking with him at a local bar.

. . .Another thing about which he expressed concern, would be

3

what is commonly referred to as DWH and DWB. Driving while

Hispanic and driving while Black.

 The statistics of the police department will overwhelmingly show that

lower class Hispanics, lower class Blacks are routinely stopped and

summoned [*sic*.], where White residents of the Village don't get

any summons, even if they are stopped.

 The same carries through with respect to criminal prosecutions. If

you're Black you get prosecuted for less significant things than Whites

who happen to be well-connected and wealthy in Bronxville, who are

not prosecuted at all" (Kempkes I ¶8, Miller Aff. Ex. 1)

 d. By way of follow-up to his defense attorney's remarks, on December 21, 2006,

Plaintiff wrote to the Village's Mayor and each of the Village's Trustees advising:

 "Re: <u>Systemic discrimination by the Village</u>

Dear Mayor Marvin:

Although I am employed by the Village of Bronxville as a police officer, I

am writing to you exclusively in my capacity as a concerned and

knowledgeable citizen.

The Village's Police Department, under the leadership of Chief Downey,

does not have among its sworn members a single female officer.

Under Chief Downey's stewardship the Police Department has managed

to avoid hiring any person of Hispanic ethnicity.

Under the Chief's administration there are but two African-American

officers in the Department.

Historically there has never been a female Police Officer and/or an

Hispanic Police Officer employed by the Village. Historically there was

for years only one, token African-American Police Officer.

It is my opinion, based upon personal observation, that our limited police

resources are used to detain/prosecute Hispanics and African-Americans

for what is commonly referred to as "DWB" and "DWH". Caucasian

motorists are not similarly treated.

Since it is nearly 2007 I propose that the Village, acting through its very

capable administration, hurtle into the twenty-first century and begin

providing Equal Protection to all persons regardless of gender, ethnicity,

national origin and/or skin color.

Allow, for purposes of change, the rights guaranteed by reason of the First

and Fourteenth Amendments to the United States Constitution to apply to

all persons within the Village - - not just the Caucasian constituents who

voted you into office on a temporary basis.

Kindly make this correspondence part of the Village Board's official

record at its upcoming public meeting. I trust that you will find that the

vast majority of the Village's residents do not believe that maintaining

systemic and pervasive discriminatory practices is wise" (Kempkes I ¶9,

Miller Aff. Ex. 1).

    e. As a proximate result of Plaintiff's expression of concerns, as

referenced in the preceding paragraphs "8" and "9", *supra*, Defendants retaliated

against Plaintiff and  with respect to the pay period ending February 2, 2007,

unilaterally reduced Plaintiff's net bi-weekly salary by approximately $570 (Kempkes I ¶9, Miller Aff. Ex. 1).

On April 16, 2007, Defendants again moved to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

On October 12, 2007, the Hon. George A. Yanthis issued a report and recommendations denying in substantial respect Defendants' motion (Kempkes II ¶9, Miller Aff. Ex. 4).

Thirty-five days thereafter and on November 19, 2007, Defendants terminated Plaintiff's employment by a final administrative determination that was approved and signed by Defendants Marvin, Poorman, Bellitto, Underhill and Barton (Kempkes II ¶10, Miller Aff. Ex. 4).

The termination of Plaintiff's employment was motivated in whole and/or in substantial respect to retaliate against Plaintiff for his having filed <u>Kempkes I</u> (Kempkes II ¶11, Miller Aff. Ex. 4).

## STANDARD PRINCIPLES

In a pre-discovery motion to dismiss, all well-pleaded facts must be accepted as true in the light most favorable to the plaintiff. Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007). "In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'" Patane, *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). Indeed, the Bell Atlantic ruling does not call for "a universal standard of heightened pleading, but is instead requiring a flexible 'plausibility standard', which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)(emphasis in original).

## POINT I

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DENIED IN ALL RESPECTS

At minimum, Plaintiff amply alleges that he was terminated in retaliation for his filing Kempkes I.

### A. Plaintiff engaged in protected activity

Plaintiff clearly engaged in protected activity when he brought Kempkes I. As this Court found in Kempkes I, Plaintiff's mid-December 2006 written communication to the Board was "protected speech". Kempkes v. Downey, 2008 WL 852765, *3.

In order to state a claim for First Amendment retaliation, Plaintiff is required to assert that (1) his speech addressed a matter of public concern, (2) he suffered an adverse

employment action, and (3) causal connection existed between the speech and the adverse employment action.  Konits v. Valley Stream Central High School Dist., 394 F.3d 121 (2d Cir. 2005).

Instead of focusing on the underlying speech set forth in Kempkes I, Defendants mischaracterize/confuse the allegations in that complaint and argue that the factual bases for Plaintiff's complaint is the "revocation of disability benefits, preferral of disciplinary charges, a reduction in his salary, and a denial of health benefits to his spouse" (Defendants' Memorandum page 13).  Of course, those allegations were examples of adverse action -- not protected activity.  Defendants conveniently ignore the actual protected activity alleged in Kempkes I including the December 2006 letter to the Board -- which this Court found was indeed protected speech.

Moreover, Defendants ignore the Konits decision in which the Second Circuit found where an earlier lawsuit was "predicated on speech about gender discrimination against a fellow employee. . ." which resulted in retaliation that the speech involved related to a matter of public concern.  Konits, 394 F.3d at 125-126.  Plaintiff's December 2006 communication relating to the discrimination of women and minorities in the Village was certainly on matters of public concern.  In Konits, the Second Circuit left no doubt about the protected nature of such speech, clearly finding "[b]y our decision today, we. . . hold that any use of state authority to retaliate against those who speak out against discrimination suffered by others…can give rise to a cause of action under 42 U.S.C. § 1983 and the First Amendment."  Konits, 394 F.3d at 125.

Instead Defendants cite the inapposite case of Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008) in support.  Simply put, the plaintiff in Ruotolo, a retired New

York City sergeant, was attempting to continue his 1999 action despite the intervening Supreme Court decision of Garcetti v. Ceballos, 547 .S. 410 (2006). In Ruotolo, the plaintiff was precinct safety officer who was assigned to investigate employee illnesses and deaths that may have been related to contamination and health risks caused by underground gasoline storage tanks. He then submitted a two-page report which identified a number of cases of illnesses which had afflicted employees at the precinct. Plaintiff alleged on-the-job retaliation shortly following his submission of that report. In view of Garcetti, the Second Court correctly affirmed the lower court's dismissal of the case, holding that the retaliation based on filing the lawsuit was not protected since "the underlying retaliation claim rests on non-actionable official speech [the two-page report]." 514 F.3d at 189.

Moreover, Plaintiff's protected speech set forth in Kempkes I relating to systemic discrimination in the Village's enforcement of laws and in the failure to hire women and minorities clearly relate to matters of public concern in contrast to the cases cited by Defendants in pages 12 and 13 of their moving Memorandum because those employees expressed concern about personal grievances.

**B. A causal connection is amply alleged**

On October 12, 2007, the Court issued a report and recommendations denying in substantial respect Defendants' motion in Kempkes I. Just thirty-five days later, on November 19, 2007, Defendants terminated his position.

The time frame of thirty-five days is not beyond that which courts in this Circuit have concluded establishes a causal link. *See* Richardson v. New York State Dep't of

Corr. Service, 180 F.3d 426, 446-47 (2d Cir.1999) *abrogated on other grounds*,

Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S.Ct. 2405 (2006)

(acts within one month of receipt of deposition notices may be retaliation for initiation of

lawsuit more than one year earlier); Gorman-Bakos v. Cornell Cooperative Extension of

Schenectady County, 252 F.3d 545, 558 (2nd Cir. 2001) ("This Court has not drawn a

bright line to define the outer limits beyond which a temporal relationship is too

attenuated to establish a causal relationship between the exercise of a federal

constitutional right and an allegedly retaliatory actions."), *citing inter alia*, Grant v.

Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2nd Cir. 1980) (eight-month gap suggests a

causal relationship); Suggs v. Port Auth. of N.Y. and N.J., 1999 WL 269905 at *6

(S.D.N.Y. May 4, 1999) (six month gap suggests causal relationship); Bernhardt v.

Interbank of N.Y.,18 F.Supp.2d 218, 226 (E.D.N.Y. 1998) (eleven months might suggest

causal relationship); Stephens v. State Univ. of N.Y. at Buffalo, 11 F.Supp.2d, 242, 250

(W.D.N.Y. 1998) (six month gap might show causal relationship).

 Defendants contend that Plaintiff cannot assert retaliatory termination in the

instant case for having filed Kempkes I because they claim that the thrust of Kempkes I

was the Board was determined to terminate his employment (Defendants' Memorandum

p. 14). Tellingly, Defendants do not cite any portion of Kempkes I in support of this

assertion.

 Assuming *arguendo* what Defendants claim is correct, Defendants miss the point

-- the filing Kempkes I was "a motivating factor in the determination" to terminate

Plaintiff's employment. Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003),

*quoting* Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999).  Stated differently, the filing

of Kempkes I need not be the only factor in the Defendants' determination to terminate

Plaintiff's employment -- it simply need be "at least a 'substantial' or 'motivating' factor

for the discharge." Frank v. Relin, 1 F.3d 1317 (2d Cir. 1993), *quoting* White Plains

Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir.1993)(further citations omitted).


## POINT II

### THE DISCIPLINARY PROCEEDING
### DOES NOT BAR THE INSTANT LAWSUIT

Defendants assert that the municipal Defendants' determination -- each of whom

was sued in their individual capacities -- somehow bars Plaintiff's claim entirely. This

argument must be rejected for several reasons.

**A. The Plaintiff's current claims were not actually litigated and necessarily decided
in the administrative forum**

The burden is on the proponent of collateral estoppel, here the defendants, to

demonstrate that the identical issue was necessarily decided in a prior action and is

decisive in the present action. Ryan v. New York Telephone Co., 62 N.Y.2d 494 (1984);

Kaufman v. Lilly & Co., 65 N.Y.2d 449, 456 (1985). Once the proponent establishes

these elements, the opponent may defeat its application by showing the absence of a full

and fair opportunity to litigate the issue in the prior proceeding. Id.

Here, defendants fail to demonstrate that the identical issue was actually litigated

and necessarily decided in connection with the disciplinary matter.

The issues presented by the instant case are whether Plaintiff's First Amendment

rights were violated by the acts of the Defendants. Critical to this claim is the issue of

Defendants' motive and intent in terminating his employment after a hearing conducted

by them. The issues of Defendants' motive and intent were never actually litigated nor

necessarily decided in the administrative forum.   More importantly, it was impossible for

Defendants to do so since whether they were retaliating against Plaintiff for having filed

Kempkes I by terminating his employment was an issue which arose only after the final

determination by them was made.

Furthermore, Defendants would have this Court believe that it was perfectly

acceptable for them to rule on a constitutional claim brought by Plaintiff against them.

None of cases cited by Defendants supports that contention.

As the District Court held in Walker v. Triborough Bridge and Tunnel Authority,

1990 WL 52139 (S.D.N.Y. 1990) even where the administrative law judge found that a

supervisor's orders were lawful and the employee's failure to respond constituted neglect

of his duties, collateral estoppel and res judicata did not preclude the employee's §1983

claims.  For in the administrative forum, there was no determination as to the Defendants'

motive and intent in bringing the charges against Plaintiff.  Furthermore, since the

administrative forum had no power to award the full relief sought in the §1983 action,

including monetary damages, res judicata could not bar the §1983 claims.  1990 WL

52139, *6 and 7, *citing* Fay, 802 F.2d at 29 (citing Davidson v. Capuano, 792 F.2d 275,

278 (2nd Cir. 1986).

**B. Plaintiff was never provided a full and fair opportunity to litigate his
constitutional law claims in the administrative context**

Furthermore, it cannot be disputed that Plaintiff was never provided a **full and**

**fair** opportunity to litigate the precise issues presented by the Plaintiff's current civil

damages claims.

To that end, Courts have held that the nature of the proceedings at issue in a

collateral estoppel analysis must be taken into account in determining whether a full and

fair opportunity to litigate was present in the prior matter. Here, the nature of the two forums at issue, namely a disciplinary hearing versus a civil litigation seeking monetary damages, are fundamentally different.

"Although there are basic procedural safeguards in any administrative proceeding, 'such as the right to present evidence and cross-examine witnesses…there is [no] disclosure other than notice of the charges, and the rules of evidence [are] inapplicable (citations omitted).'" Jeffreys v. Griffin, 301 A.D.2d 232 (1st Dept. 2002), *citing* Stevenson at 220.

"[O]f equal significance is the scope of review available in the two settings." Id. For on appeal from a civil litigation such as this, including after a trial, the appellate court has the "broad power to review the facts and grant the judgment which upon the evidence should have been granted by the trial court (cites omitted)….The Appellate Division's scope of review of an administrative agency's quasi-judicial determination is, in contrast, very limited." Id.; *see also* Gilberg v. Barbieri, 53 N.Y.2d 285, 292 (1981) (factors considered by the Court in ruling that collateral estoppel would not be **offensively** applied include the nature of the forum provided in the prior litigation, the use of initiative, the extent of the litigation, the availability of new evidence, differences in the applicable law and the foreseeability of future litigation).

Here, the fundamental differences between the administrative proceeding and the current civil litigation demonstrate the lack of a full and fair opportunity to litigate the material issues in the prior disciplinary context. Again, there was no opportunity for discovery. Plaintiff had no option in the choice of forum or hearing officer selected.

Here, "[a] ruling in favor of [defendant on the collateral estoppel issue] would effectively make the administrative agency in a disciplinary proceeding the ultimate fact finder, with only limited judicial review, in any tort action arising out of the alleged misconduct, thereby depriving a defendant of a number of valuable rights traditionally associated with civil actions, including the right to a trial by jury. [Defendants'] use of collateral estoppel offensively to establish liability...would not comport with the underlying fundamental fairness aspects of the doctrine." Jeffreys, 301 A.D.2d at 236 (citation omitted).

Moreover, "a § 1983 plaintiff is not bound by the findings of the administrative hearing if he is 'deprived of an opportunity to litigate his claim fully and fairly before a *neutral arbitrator.*'"  Locurto v. Safir, 447 F.3d 159, 171 (2d Cir. 2006), *quoting* Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir.1995) (emphasis added in Locurto).

Here Defendants were anything but neutral.

While Defendants claim Plaintiff raised the issue of First Amendment retaliation at the hearing -- they conveniently neglect to advise this Court that minimal procedural safeguards provided in federal court did not extend to Plaintiff's hearing and Plaintiff's counsel time and again during the disciplinary proceeding advised Defendants that Plaintiff intended to bring an action in Federal Court (1/4/2007 Tr. 243-244, 253-54, Nicaj Aff. Ex. 1). The Village's prosecuting attorney confirmed that "[t]here are no rules of evidence applicable in this hearing." (1/4/2007 Tr. p. 253-54, Nicaj Aff. Ex. 1).

Moreover, Plaintiff's counsel advised Defendants that he thought the disciplinary hearing was anything but fair --- advising the Defendants that the Mayor -- Defendant Marvin had overruled most of his objections on every major point (1/4/07 Tr. p. 254-55,

Nicaj Aff. Ex. 1). Plaintiff's counsel referred to the disciplinary hearing as a "kangaroo forum" and specifically advised that Plaintiff intended to bring an action in Federal Court (1/4/07 Tr. p. 253-54, Nicaj Aff. Ex. 1).[1]

Indeed, the prosecuting attorney recognized that the limited authority the Defendants had stating at one point that "if in fact there is an allegation that the suspension was illegal, it has **nothing to do** with this proceeding. That would be a separate issue that ought to be pursued, frankly, in another [sic] form." (1/10/2007 Tr. p. 372, Nicaj Aff. Ex. 2). Plaintiff's counsel responded "[i]t will be. . ." (1/10/2007 Tr. p. 372, Nicaj Aff. Ex. 2). *See* Locurto, 447 F.3d at 171 (collateral estoppel does not attach to findings of disciplinary hearing of police officers where the decision makers were biased).

Defendants further claim that the Board's decision was reviewable pursuant to Article 78 of the New York Civil Practice Law and Rules. Defendants then erroneously claim that that since Plaintiff has not challenged the Defendants' decision, their "determination is 'final' and consequently preclusive" (Defendants' Memorandum p. 10).

The Second Circuit, has specifically stated, "contrary to the defendants' argument, the fact that the availability of post-termination review via an Article 78 proceeding is sufficient to satisfy due process does not mean that it is sufficient to confer collateral estoppel effect upon pre-termination hearing findings." Locurto, 447 F.3d at 171 n. 4.

Furthermore, Plaintiff interposed a reservation of rights pursuant to England v. Louisiana Board of Medical Examiners, 375 U.S. 411 (1964), expressly preserving for

---

[1] In Plaintiff's Answer to the charges, Plaintiff further reserved for adjudication all civil rights claims pursuant to England v. Louisiana, 365 U.S. 411 (1964).

adjudication in the United States District Court for the Southern District of New York all of their federal civil rights claims (Disciplinary Answer, Nicaj Aff. Ex. 4).

Finally, Defendants were undoubtedly aware that Plaintiff brought a federal civil rights action in Federal Court before they rendered their self-serving determination in November 2007 -- finding that Plaintiff did not engage in protected speech and terminating Plaintiff's employment. Indeed, Defendants' attempt to usurp this Court's jurisdiction over constitutional issues is blatantly obvious. Plaintiff filed Kempkes I on or about February 20, 2007 and filed a First Amended Complaint individually naming the Board Defendants as parties on March 27, 2007. The individual members of the Board were each served with the First Amended Complaint on April 9, 2007 -- putting them on further notice of Plaintiff's intent to bring his First Amendment claims against them in federal court – not the biased hearing in which they were the ultimate decision makers (Affidavits of Services, Nicaj Aff. Ex. 3).

## C. Defendants' reliance here again on DeCinto and Burkybile is misplaced

Defendants inappropriately rely on DeCinto v. Westchester County Medical Center, 821 F.2d 111 (2d Cir. 1987) and Burkybile v. Board of Education, 411 F.3d 306 (2d Cir. 2005).

In DeCinto, the Second Circuit did not directly rule on whether the plaintiff had an adequate opportunity to litigate the First Amendment retaliation issue during his Section 75 hearing which was incidentally before a neutral hearing officer -- unlike Plaintiff's disciplinary hearing -- because "[i]n any event, furthermore, the retaliation issue was in fact litigated in the proceeding before [State Division of Human Rights]." 821 F.3d at 117.

Here there was no hearing officer -- the Board was required to preside over the hearing pursuant to Section 5711-q of the Unconsolidated Laws of New York.

In Burkybile, 411 F.3d 306 (2d Cir. 2005), unlike here, the hearing officer's determination as to guilt and penalty was binding on the Defendants. Put differently, Defendants there did not have the independent duty to review the record and render a determination on their own. Id. at 312. In other words, Defendants could not circumvent or reverse the hearing officer's determination.

Second, in connection with the §3020-a proceeding in Burkybile, a state agency (namely the New York State Department of Education) set the procedures to be utilized in the §3020-a proceeding, administered those procedures, and paid for the arbitrator. The Second Circuit found this to be an important fact in determining the preclusive effect of any administrative proceeding. Burkybile, 411 F.3d at 312.

Here, in contrast, Defendants acted as hearing officers and made the decision. In doing so, of course, Defendants were never going to render a decision that Plaintiff's constitutional rights were violated by them.

Third, in connection with the 3020-a proceeding in Burkybile, certain procedural means were available to provide plaintiff with a full and fair opportunity to litigate her claims. Those means are not similarly available and were never provided to plaintiff here, including: motion practice; mandatory disclosures; and discovery. Burkybile, 411 F.3d at 312.

Under these circumstances, the disciplinary hearing and the Defendants' findings in no way precludes any of the claims brought by Plaintiff in this lawsuit. As a result, Defendants' motion to dismiss on these grounds should be denied.

17

## POINT III

## DEFENDANTS ARE NOT ENTITLED TO
## ABSOLUTE OR QUALIFIED IMMUNITY

Defendants also argue that they are entitled to absolute and/or qualified immunity.

### A. The Defendant Board members are not entitled to absolute immunity

Importantly, the applicability of absolute immunity is limited and not favored, particularly in §1983 actions where it has been held to detract from §1983's broad remedial purposes. Spear v. Town of West Hartford, 954 F.2d 63, 66 (2nd Cir. 1992), cert. denied, 506 U.S. 819 (1992); Burns v. Reed, 500 U.S. 478, 486 (1991) (Courts have been "'quite sparing' in their recognition of absolute immunity").

Here, the Board members terminating Plaintiff's position was an administrative, personnel type, decision aimed at one particular individual for which no immunity can attach. "Such decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under §1983." Forrester v. White, 484 U.S. 219, 229 (1988).

To that end, it is axiomatic that employment and personnel decisions generally speaking are administrative acts for the purposes of evaluating official immunity. Dobosz v. Walsh, 892 F.2d 1135 (2nd Cir. 1989); Alexander v. Holden, 66 F.3d 62, 66 (4th Cir. 1995); Brennan v. Straub, 246 F.Supp.2d 360 (S.D.N.Y. 2003) (denying absolute immunity since act of eliminating a single position is more administrative than legislative in nature).

To the extent Defendants rely on a few district court decisions, they are clearly not binding precedent on this Court. The Court should instead abide by the binding precedent set forth by the Second Circuit in <u>Dobosz</u>, 892 F.2d 1135 and <u>Harhay v. Town of Ellington Board of Education</u>, 323 F.3d 206, 210-211 (2nd Cir. 2003).

In <u>Dobosz</u>, the Second Circuit assessed the Defendant's argument that "because he acted as a prosecutor in presenting the charges against <u>Dobosz</u> before the Board of Commissioners he was entitled to absolute immunity under <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976) and <u>Butz v. Economou</u>, 438 U.S. 478 (1978)." The Second Circuit denied the defendant's motion for absolute immunity noting the "important difference" between the holdings of these cases and the facts present where a supervisor initiates disciplinary action and a suspension against a subordinate employee. The Court held that such actions are more appropriately governed by the holding in <u>Forrester</u> and were not absolutely immune. *See* <u>Dobosz</u>, 892 F.3d at 1139-1140.

The Second Circuit highlighted the applicability of that Supreme Court decision to this case:

> "a judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys, or indeed from any other executive branch official who is responsible for making employment decisions. Such decisions, like personnel decision made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under §1983." <u>Dobosz</u>, 892 F.2d at 1139-1140, *citing* <u>Forrester</u>, 484 U.S. at 229.

Similarly, in <u>Harhay</u>, the Second Circuit held that "[d]iscretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decision making is no different in substance from that which is enjoyed by other actors, *citing* <u>Forrester</u>, 484 U.S. at 229-30. There, the Court noted that the determination by the Board with respect to the Plaintiff's employment were clearly administrative in nature. Although carried out by a vote of the Board, the action was "part of a process by which an employment situation regarding a single individual was resolved." As such, absolute immunity did not apply. *See* <u>Harhay</u>, 323 F.3d at 210-211.

These holdings are not only binding on the facts here, but they are logical. For no one suggests that an individual decision maker should be entitled to absolute immunity for a decision to suspend, discipline, or even terminate an employee who had no rights under 5711-q of the Unconsolidated Laws. The only reason why actual charges had to be brought here is that as a civil servant in the competitive class State law required that Plaintiff receive due process before discipline was imposed. It is illogical to suggest that because Plaintiff has job protections somehow the individuals who preferred the charges get absolute immunity because they were required to follow the procedures set forth in the Civil Service Law. Those same individuals would not be accorded absolute immunity if their conduct was directed at a non-tenured employee who had no such protections.

Clearly, the functions these defendants performed, namely discipline of and termination of a single employee, are administrative acts that do not entitle them to absolute immunity. When viewed against the binding precedent of this Circuit, Defendants' arguments for absolute immunity must be rejected.

## B. The individual Defendants are not entitled to qualified immunity

Qualified immunity shields government officials from liability for civil damages when the performance of their discretionary functions "'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Piesco v. City of New York, Dep't of Personnel, 933 F.2d 1149, 1160 (2d Cir. 1991), *cert. denied* 112 S.Ct. 331 (1991). An official does not have immunity, however, where the contours of the right were sufficiently clear that a reasonable person would understand that what he is doing violates that right." Id.

Here, the complaint sufficient pleads a violation of his First Amendment rights. *See* Points I, *supra*.

Defendants do not dispute, nor could they, that these rights were clearly established as of the time the adverse action was taken against Plaintiff in 2007. *See* Konits, 394 F.3d at 125-126 (1996 lawsuit was protected First Amendment activity as it was predicated on speech about gender discrimination directed at a fellow employee); Munafo v. Metropolitan Transportation Auth., 285 F.3d 201, 211 (2nd Cir. 2002) (right to be free from retaliation for speech on matters of public concern).

Defendants' entire argument for qualified immunity is premised upon the same arguments set forth in support of their motion to dismiss the First Amendment claims –

21

namely that it was objectively reasonable for them to terminate Plaintiff. Defendants'

retaliatory motive and intent is amply plead here. *See* Point I, *supra.*

Ignored by Defendants is the fact that it cannot be objectively reasonable for a

defendant to be motivated by an intent to retaliate against Plaintiff and punish him for the

exercise of his constitutional rights. And more importantly, since no reasonable official

would believe it lawful to take the adverse action complained of herein if they were

motivated, at least in part, by Plaintiff's protected activities, the motion on qualified

immunity grounds must be denied. As the Second Circuit has held: **"it can never be**

**objectively reasonable for a governmental official to act with the intent that is**

**prohibited by law."** Locurto v. Safir, 264 F.3d 154, 169 (2nd Cir. 2001).

> "Though the qualified immunity inquiry is generally an objective one, a
> defendant's subjective intent is indeed relevant in motive-based constitutional
> torts such as the one alleged by [Plaintiff]. Otherwise, defendants in such cases
> would always be immunized from liability 'so long as they could point to
> objective evidence showing that a reasonable official could have acted on
> legitimate grounds.' Locurto, 264 F.3d at 169 (*quoting* Hoard v. Sizemore, 198
> F.3d 205, 218 (6th Cir. 1999). Where a factual issue exists on the issue of motive
> or intent, a defendant's motion for summary judgment on the basis of qualified
> immunity must fail. Id. at 170." Johnson v. Ganim, 342 F.3d 105, 117 (2nd Cir.
> 2003).

*See also* Weyant v. Okst, 101 F.3d 845, 858 (2nd Cir. 1996).

When all of these factual allegations are reviewed in the light most favorable to

Plaintiff it becomes self-evident that a reasonable official in Defendants' shoes would not

have believed their actions were lawful. *See* Dobosz, 892 F.2d at 1140 ("[Plaintiff's]

allegations that [Defendants] retaliated against him for the exercise of First Amendment

rights raise questions of motivation that make summary judgment based on qualified

immunity wholly inappropriate.").

## **CONCLUSION**

Defendants' pre-discovery 12(b)(6) motion to dismiss should be denied in all

respects.


Dated: White Plains, N.Y.
        July 18, 2008


                                    LOVETT & GOULD, LLP

                                    By: _____
                                    Drita Nicaj (DN 0966)
                                    Attorneys for Plaintiff
                                    222 Bloomingdale Road
                                    White Plains, N.Y. 10605
                                    914-428-8401