UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
THOMAS KEMPKES,

             Plaintiff,

  – against –                         07-cv-11351 (KMK)

MARY C. MARVIN, individually, GLENN D.
BELLITO, individually, ROBERT J. UNDERHILL,
individually, ANNE W. POORMAN, individually,
WILLIAM H. BARTON, individually, and the VILLAGE
OF BRONXVILLE, N.Y.,

             Defendants.
------------------------------------------x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

61163.2 8/8/2008

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................................1

    POINT I:    THE AMENDED COMPLAINT IS BARRED BY
                         COLLATERAL ESTOPPEL .....................................................................................1

    POINT II:   PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM OF FIRST
                         AMENDMENT RETALIATION ...............................................................................6

        A.    Plaintiff Has Not Engaged In Any Activity Protected Under The
               First Amendment ..........................................................................................6

        B.    Plaintiff Failed To Allege A Causal Connection Between His Speech
               And Termination ...........................................................................................8

    POINT III:  ABSOLUTE AND/OR QUALIFIED IMMUNITY SHOULD
                         BE GRANTED .......................................................................................................10

CONCLUSION..............................................................................................................................10

## ARGUMENT

**POINT I:   THE AMENDED COMPLAINT IS BARRED BY COLLATERAL ESTOPPEL**

On pages 10 and 11 of our initial memorandum of law, we cited cases directly on point demonstrating that since Plaintiff expressly raised the issue of retaliation in his Section 5711-q disciplinary hearing, he may not re-litigate that issue in this action. *See e.g., Burkybile v. Bd. of Educ. of Hastings-on-Hudson*, 411 F.3d 306 (2d Cir. 2005); *DeCintio v. Westchester County*, 821 F.2d 111 (2d Cir. 1987); *Marden v. Dinin*, 22 F. Supp. 2d 180 (S.D.N.Y. 1998); *Richardson v. City of New York*, 2004 WL 325631 (S.D.N.Y. 2004). Plaintiff simply cannot distinguish these cases.

For example, in *Marden v. Dinin*, a police chief was discharged after a disciplinary hearing was held pursuant to the Westchester County Police Act.[1] 22 F. Supp. 2d at 183-84. During the disciplinary proceeding, the chief alleged that the charges were preferred against him as part of a personal vendetta to "deprive him of his 'civil rights as guaranteed by the Constitution'" (*id.* at 183), and based his defense to the charges on this issue specifically raising it in his opening statement at the hearing. *Id.* Granting the defendants' motion to dismiss the subsequent retaliation claim the chief brought in federal court, the judge held that because the chief specifically raised the retaliation issue at the disciplinary hearing, he was collaterally estopped from relitigating "the circumstances of his dismissal" in federal court. *Id.* at 186.

Plaintiff cannot seriously dispute that in defense of the underlying disciplinary charges, he specifically argued that the charges and subsequent disciplinary proceeding were retaliation for having allegedly spoken out against discrimination in the police department and for having filed *Kempkes I*. (Def. Mem. 7-8; Miller Aff. Ex. 2). The Board specifically adjudicated Plaintiff's retaliation defense, holding that Plaintiff did not engage in any such speech, and that the disciplinary proceeding was completely unrelated to Plaintiff's non-existent speech. (Def. Mem. 7-8; Miller Aff. Ex. 3 at 22). As in

---

[1] The disciplinary proceeding here was conducted pursuant to the Westchester County Police Act provision relating to the discipline of police officers employed by villages in Westchester County. *See* N.Y. Unconsol. L. § 5711-q.

*Marden*, the fact that Plaintiff does not like the Board's rejection of his retaliation claim, does not entitle him to litigate it again here.

Plaintiff's citation to *Walker v. Triborough Bridge and Tunnel Authority*, 1990 WL 52139 (S.D.N.Y. 1990) in opposition to the above is unavailing. In that case, the reason the plaintiff was not estopped was because the retaliatory nature of the Section 75 hearing was never raised before the ALJ,[2] and the ALJ never made any finding regarding retaliation at the Section 75 hearing. *Id.* at *6 In sharp contrast, Plaintiff here specifically raised the retaliatory nature of the disciplinary proceeding and the Board specifically adjudicated that issue. (*See* Def. Mem. 7-8; Miller Aff. Exs. 2, 3 at 22). Moreover, Plaintiff's statement that *res judicata* did not bar the *Walker* plaintiff's Section 1983 claim because no monetary damages were available in the administrative forum is irrelevant. Defendants make no argument that *res judicata* has any effect whatsoever. In as much as the tests for *res judicata* and collateral estoppel are separate and distinct doctrines, the *Walker* court's *res judicata* determination has no bearing here. *See Mac Ineirghe v. Bd. of Educ.*, 2007 U.S. Dist. LEXIS 61841 (E.D.N.Y. 2007)("Because *res judicata* does not apply to a § 1983 claim for damages where the previous litigation did not involve damages, the question is whether the plaintiff[s'] claims are barred by collateral estoppel." (alteration in original)).

Plaintiff has also failed to carry his burden by asserting that he lacked a full and fair opportunity to litigate the retaliatory nature of the disciplinary proceeding. Where an individual is disciplined only after an administrative hearing was held at which he was represented by counsel, called witnesses on his behalf, and engaged in cross-examination of others, a full and fair opportunity to litigate was had:

> Further, the record establishes *as a matter of law that plaintiffs had a full and fair opportunity to litigate the issues in that hearing*. It is undisputed that Aaron was represented by the same lawyer who represents plaintiffs in the instant action. Counsel called witnesses on Aaron's behalf and cross-examined the District's witnesses.

---

[2] At the Section 75 hearing, the plaintiff merely argued that the orders he was charged with disobeying "were impossible to comply with" and were "outside of his official duties." *Walker*, 1990 WL 52139 at *6. Although in appealing the ALJ's decision to the Civil Service Commission the plaintiff raised the issue of retaliation, the Commission declined to make any ruling in this regard because it lacked jurisdiction to do so. *Id.* at *6 n. 5.

*Wisniewski v. Bd. of Educ. Weedsport Cent. Sch. Dist.*, 2006 U.S. Dist. LEXIS 41014 (N.D.N.Y. 2006), *aff'd*, 494 F.3d 34 (2d Cir. 2007)(involving an Education Law § 3214(3)(c)(1) hearing).

Plaintiff's reference to the inapplicability of the rules of evidence in administrative proceedings as purported proof he lacked a full and fair opportunity to litigate ignores the fact that administrative determinations are routinely given collateral estoppel effect. *See, e.g., Burkybile*, 411 F.3d 306; *DeCintio*, 821 F.2d 111.

In addition, despite Plaintiff's statement that "there was no opportunity for discovery" at the hearing (Pl. Mem. 13), in fact, during the course of the disciplinary proceeding, Plaintiff requested and the Board ordered that he be provided with discovery, and the Village complied. (*See* Miller Reply Aff. Ex. 1 at 193, 212-216, 343, 393-94). Nonetheless, the unavailability of discovery in administrative proceedings does not preclude an administrative determination from having collateral estoppel effect. *See Chauffeur's Training Sch., Inc. v. Spellings*, 478 F.3d 117, 132 (2d Cir. 2007)(administrative determination given preclusive effect over argument there was not a full and fair opportunity to litigate because "the administrative proceeding did not permit discovery"); *cf. Dolan v. Roth*, 170 Fed. Appx. 743, 747 (2d Cir. 2006)(First Amendment retaliation claim collaterally estopped where "[plaintiff] had a 'full and fair opportunity' to argue his First and Fourteenth Amendment claims notwithstanding the New York Supreme Court's denial of his discovery request. ... 'the general inability to obtain in the Article 78 proceeding all the discovery [plaintiff] might be entitled to in federal court' does not 'diminish the full and fair opportunity [plaintiff] had to litigate these issues in the Article 78 proceeding.'").

Moreover, Plaintiff's citation to *Locurto v. Giuliani*, 447 F.3d 159 (2d Cir. N.Y. 2006) is unavailing in that there, before any disciplinary hearings were held, the ultimate decision makers (who were not the individuals who conducted the hearings) had already determined the plaintiffs would be terminated for their conduct. *See id.* at 171. Thus, regardless of what may or may not have occurred at the hearings, the plaintiffs' fates were sealed. Such is not the case here. Plaintiff was afforded a full

hearing to contest the legitimacy of the disciplinary charges. Plaintiff obtained discovery, and was afforded the opportunity to, and did, submit documentary evidence, present witnesses on his behalf, and cross-examine those witnesses testifying against him. (Miller Aff. Ex. 3 at 1; *see generally* Miller Reply Aff. Ex. 1)

Further, the fact that the Board itself conducted the disciplinary hearing instead of a hearing officer is irrelevant. Section 5711-q(9) mandates the Board to sit as the fact-finder and conduct a hearing on disciplinary charges, a point with which Plaintiff agrees. Unconsol. L. § 5711-q(9)("...the trial of such charges shall not be delegated and must be heard before the full board of trustees"); (Pl. Mem. 17). Inasmuch as the hearing here was conducted in accordance with this statutory mandate, that Plaintiff "had no option in the choice of forum or hearing officer selected" (*id.* at 13) is unavailing. *See Marden*, 22 F. Supp. 2d 180 (plaintiff precluded from relitigating retaliatory nature of disciplinary hearing conducted pursuant to sister-section to § 5711-q applicable to towns). In *Marden*, like here, the Board itself acted as the administrative tribunal. *Id.*

Plaintiff claims that collateral estoppel is also inappropriate here because the Board was allegedly biased since "most" of Plaintiff's counsel's (Jonathan Lovett) objections were overruled. (Pl. Mem. 14). As the complete disciplinary record demonstrates, throughout the proceedings, the Board was advised by independent counsel as to the validity of Mr. Lovett's objections and conferred with such counsel upon Mr. Lovett's objections (*see, e.g.*, Miller Aff. Ex. 3 at 1; Miller Reply Aff. Ex. 1 at 37-39, 51-52), overruled some of Mr. Lovett's objections while sustaining others (*see, e.g.*, Miller Reply Aff. Ex. 1 at 36, 62, 55-57, 59-60, 64, 66, 85, 135, 301-02, 316-18), and each member of the Board was polled as to their vote thereon. (*see, e.g., id.* at 27, 31-32, 55-57, 255, 316-17, 372). To whatever extent Mr. Lovett's objections were overruled, that speaks more to the validity of the objections made than to any alleged bias of the Board. *See, e.g., id.* at 141-42).

Plaintiff also cites the inapposite case *Jeffreys v. Griffin*, 301 A.D.2d 232, 236 (1st Dep't 2002) in purported support that collateral estoppel should not apply. Although in that case collateral estoppel

did not apply to an administrative revocation of a physician's license, the court was troubled that the revocation likely resulted because the physician was convicted for assaulting a patient, but then, on retrial after the revocation, was acquitted of the criminal charges. *Id.* at 233, 237, 239 ("…issue preclusion might be appropriate as between administrative findings and civil actions under appropriate circumstances, this is not such a case. … In view of the peculiar procedural history of this case, the [physician] should have his day in court."). The Court of Appeals agreed that this was the sole reason why collateral estoppel should apply in that case. *Jeffreys v. Griffin*, 1 N.Y.3d 34, 42-43 (2003)("There is no way to disentangle the Hearing Committee members' non-unanimous determination of sexual misconduct from their contemporaneous awareness of the outcome of defendant's first criminal trial. Because defendant was later acquitted after retrial, he should not be precluded from contesting liability for assault and battery in plaintiff's civil action."). Nothing of the sort occurred here. This was a straight-forward disciplinary hearing.

Finally, Plaintiff's supposed "reservation of rights" under *England v. Louisiana Bd. of Med. Examiners*, 375 U.S. 411 (1964) is inapplicable to this case since it only applies in the limited situations where a litigant is "shunted from federal to state courts by application of the abstention doctrine." *Id.* at 418; *see San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 339-40 (2005)(explaining applicability of *England* reservation stating, "*England* does not support [the] erroneous expectation that [a litigant's] reservation would fully negate the preclusive effect of [a] state-court judgment with respect to any and all federal issues that might arise in … future federal litigation.").

Despite Plaintiff's arguments to the contrary, the law is clear. Plaintiff chose to raise the issue of First Amendment retaliation at the disciplinary proceeding, basing part of his defense thereon. Plaintiff cannot now raise that same issue before this Court in an effort to immunize himself from the consequences of his now-proven misconduct and evade the penalty imposed on him for that misconduct when the disciplinary proceeding concluded. The Board's decision on penalty (*i.e.*, Plaintiff's

termination) was part and parcel to the overall disciplinary proceeding that was already unsuccessfully challenged by Plaintiff as being retaliatory.

POINT II: PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM OF FIRST AMENDMENT RETALIATION

A.   **Plaintiff Has Not Engaged In Any Activity Protected Under The First Amendment**

Despite Plaintiff's attempts to confuse this Court, in filing *Kempkes I*, Plaintiff did not engage in any activity protected by the First Amendment. Indeed, because *Kempkes I* seeks to redress Plaintiff's own grievances with the police department, the actual filing of that lawsuit — which is the alleged protected speech upon which Plaintiff's retaliation claim in *Kempkes II* is based — does not constitute speech on a matter of public concern.

Although Plaintiff qualifies the Second Circuit's recent decision in *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) as being "inapposite" (Pl. Mem. 8), Plaintiff gravely miscites the holding and import of *Ruotolo* to this Court. According to Plaintiff, the *Ruotolo* court concluded the speech there was not protected in light of *Garcetti v. Ceballos*, 547 U.S. 410 (2006). (Pl. Mem. 9). Plaintiff, however, ignores the fact that the *Ruotolo* court expressly declined to engage a *Garcetti* analysis and decided the case on other grounds:

> We need not decide whether Ruotolo's lawsuit[3] amounts to speech by a "citizen" rather than by a "public employee" within the meaning of *Garcetti*: a simpler ground is available because in any event that speech is not "on a matter of public concern." … Ruotolo's lawsuit sought to redress his personal grievances. It did not seek to advance a public purpose. We therefore hold that his lawsuit did not constitute speech on a matter of public concern, and we affirm the district court's dismissal on that basis.

*Ruotolo*, 514 F.3d at 189 (footnote added). Plaintiff also misleads this Court in stating that the alleged speech in *Ruotolo* consisted only of a two-page report on illnesses caused by gasoline storage tanks. (Pl. Mem. 9). In fact, the Second Circuit never addressed whether that report was of public concern since no appeal was taken from the dismissal of the retaliation claim based thereon. *Ruotolo*, 514 F.3d at 186,

---

[3] The *Ruotolo* plaintiff commenced a lawsuit alleging First Amendment retaliation, and subsequently filed an amended complaint alleging he was retaliated against because he filed the prior complaint. *See* 514 F.3d at 187.

188-89. Rather, the speech at issue was the plaintiff's commencement of a First Amendment retaliation lawsuit — not the two page report. *See id.* at 186-90.

Determinative here, the *Ruotolo* court held that because the plaintiff's lawsuit sought relief that was "almost entirely personal" to him (*i.e.*, compensatory damages, the removal of performance reviews and disciplinary charges from plaintiff's employment records, and the restoration of benefits to plaintiff), it did not matter that the lawsuit also:

> ... accused the [municipal defendant] of routinely tolerating the violation of whistleblower rights, and seeks punitive damages to deter "future illegal and retaliatory conduct," arguably hinting at some broader public purpose. ... *[R]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by "the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern."*
>
> ***
>
> *Because Ruotolo's lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim.*

*Id.* at 189-90 (emphasis added) *quoting Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)(dismissing retaliation claim where plaintiff "was not on a mission to protect the public welfare. Rather her primary aim was to protect her own reputation and individual development as a doctor.").

Like the plaintiff in *Ruotolo*, Plaintiff here sought only to redress his own employment grievances in filing *Kempkes I* by solely seeking relief personal to him — damages for being subjected to the allegedly retaliatory disciplinary charges and proceeding, the denial of health insurance coverage to his spouse, the reduction of his pay by approximately $570, and the termination of his line-of-duty disability benefits. It is therefore of no moment that Plaintiff made general allegations of discrimination in *Kempkes I* since the relief sought therein was "for himself alone." *Ruotolo*, 514 F.3d at 189-90. Under the Second Circuit's holding and reasoning in *Ruotolo*, Plaintiff's filing of *Kempkes I* does not constitute speech on a matter of public concern. *Id.* at 190.

Moreover, Plaintiff's reliance on *Konits v. Valley Stream Cent. High Sch.*, 394 F.3d 121 (2d Cir. 2005) is misplaced. As the court there held, where "the basis for a First Amendment retaliation claim is a lawsuit, the subject of the lawsuit must touch upon a public concern." *Id.* at 124. While the court ultimately concluded the plaintiff's prior lawsuit was on a matter of public concern, it did so because her motivation in engaging in the speech underlying that lawsuit "was not to 'redress personal grievances' but rather 'had the broader public purpose' of assisting [a colleague] to redress [her] claims of gender discrimination." *Id.* at 126. In sharp contrast, here, the alleged speech underlying *Kempkes I* has already been found to have *not* occurred and to be nothing more "than the figment of someone's imagination concocted only for purposes of [the] disciplinary proceeding." (Miller Aff. Ex. 3 at 22).

**B.     Plaintiff Failed To Allege A Causal Connection Between His Speech And Termination**

In an effort to bolster his non-existent retaliation claim, Plaintiff strangely argues that he has alleged a causal connection sufficient to withstand dismissal because only thirty-five days elapsed between the Magistrate's Report and Recommendations issued in *Kempkes I* and the termination of Plaintiff's employment. (Pl. Mem. 9). In making such an argument, Plaintiff misconceives the crucial point that to have a viable claim of retaliation, the alleged adverse action must be causally connected to *Plaintiff's* protected activity. *See Frank v. Relin*, 1 F.3d 1317, 1328 (2d Cir. 1993)(to establish a First Amendment retaliation claim, "an employee must establish first that *her speech* can be fairly characterized as constituting speech on a matter of public concern, and second that *that speech* was at least a substantial or motivating factor in the discharge." (emphasis added; internal citation and quotation omitted)). By using Magistrate Yanthis's decision as his guidepost in calculating the time that passed between the "speech" and Plaintiff's termination, Plaintiff effectively concedes that it was the Magistrate's decision and not his own speech — *i.e.*, the actual filing of *Kempkes I* — that prompted the Board's decision to terminate his employment.

Notwithstanding Plaintiff's incorrect use of thirty-five days as a reference, in fact, nearly *nine months* elapsed between Plaintiff's alleged protected speech and his termination. Plaintiff filed *Kempkes*

8

*I* on February 21, 2007. Plaintiff's employment was terminated on November 19, 2007. Thus, alone, the temporal proximity between these events is simply too attenuated to imply any causal connection between the two. *See, e.g., O'Reilly v. Consol. Edison*, 173 Fed. Appx. 20 (2d Cir. 2006)(three month gap insufficient); *Marro v. Nicholson*, 2008 U.S. Dist. LEXIS 19272, *24-25, *38 (E.D.N.Y. 2008)(collecting cases: "Although the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship … *district courts have generally concluded that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line.*" (emphasis added; internal quotation omitted)).

Although Plaintiff argues that a longer gaps in time can suggest a causal connection and, for example, cites *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980), this Court expressly noted that where the Second Circuit has found:

> a causal connection based on temporal proximity of more than three months …
> there were unusual aspects of the case that explained the delay. *See, e.g., Grant
> v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980)(eight-month delay
> … explained by binding eight-month job assignment already given prior to
> notice of complaint).

*Moore v. Consol. Edison Co.*, 2007 WL 831807, *7 n. 11 (S.D.N.Y. 2007)(Crotty, J.).

Further, inasmuch as the disciplinary proceeding concluded well after Plaintiff filed *Kempkes I* with the Board's decision finding Plaintiff guilty of substantial misconduct, any temporally-based causal connection between Plaintiff's termination and his filing of *Kempkes I* was broken. *See Lambert v. New York State Office of Mental Health*, 2000 WL 574193, *13 (E.D.N.Y. 2000)(five months was too great to establish causation in light of intervening events).

Plaintiff's allegation in the instant complaint that his termination had anything whatsoever to do with his filing of *Kempkes I* is thus reduced to his own speculation as to motive. Such a conclusory claim of retaliation must be dismissed. *See, e.g., Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007)(dismissing retaliation claim where complaint alleged only "a general

conclusory statement that [defendant] retaliated against [plaintiff]…for its having been contacted by [the] EEOC in connection with the charge he filed….Such vague, conclusory pleadings are insufficient to withstand a motion to dismiss.").

**POINT III:   ABSOLUTE AND/OR QUALIFIED IMMUNITY SHOULD BE GRANTED**

Despite Plaintiff's efforts to contradict the cases cited at page 16 of our initial brief, he cannot escape the fact that those cases hold Defendants are entitled to absolute immunity for voting on the disciplinary charges preferred against Plaintiff. To the extent Plaintiff argues it is "illogical" for Defendants to "get absolute immunity because they were required to follow the procedures set forth in the Civil Service Law" prior to disciplining him, in fact, they were not so required — Section 5711-q exclusively governs discipline of Plaintiff in this case. Unconsol. L. § 5711-q(1). Moreover, under "well established" law, where, as Defendants did here in adjudicating the disciplinary charges and assessing penalty, "officials act[] in a judicial capacity [they] are entitled to absolute immunity against § 1983 actions." *Walczyk v. Rio*, 496 F.3d 139, 164 (2d Cir. 2007).

Defendants are also entitled to qualified immunity because, in light of the extensive disciplinary proceeding held on the charges, it was reasonable for the Board to discipline Plaintiff on the basis of the proven misconduct. *See Clinch v. McKenna*, 1999 WL 357850, *2 (2d Cir. 1999)(First Amendment retaliation claim dismissed; board members entitled to qualified immunity when they reasonably believed police chief engaged in misconduct and disciplinary proceedings were initiated on that basis).

## CONCLUSION

For all of the foregoing reasons, the First Amended Complaint should be dismissed.

Dated:   Garden City New York
         August 8, 2008

Of Counsel:
   Terry O'Neil
   Jessica C. Satriano

Respectfully submitted,

BOND SCHOENECK & KING, PLLC
By: _____
   Howard M. Miller (HM4538)
   *Attorneys for Defendants*
   1399 Franklin Avenue, Suite 200
   Garden City, New York 11530
   (516) 267-6300; hmiller@bsk.com

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service, and/or the individual rules of practice of District Court Judge Kenneth M. Karas upon the following parties and participants:

    LOVETT & GOULD, LLP
    222 Bloomingdale Road
    White Plains, New York 10605

    _____
    Howard M. Miller (HMM4538)
    BOND, SCHOENECK & KING, PLLC
    *Attorneys for Defendants*
    1399 Franklin Avenue, Suite 200
    Garden City, New York 11530
    (516) 267-6300; hmiller@bsk.com