UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THOMAS KEMPKES,

                      Plaintiff,

      -v-

MARY C. MARVIN, individually, GLENN D.
BELLITO, individually, ROBERT J. UNDERHILL,
individually, ANNE W. POORMAN, individually,
WILLIAM H. BARTON, individually, and the
VILLAGE OF BRONXVILLE, N.Y.,

                      Defendants.

Case No. 07-CV-11351 (KMK)

OPINION AND ORDER

Appearances:

Jonathan Lovett, Esq.
Drita Nicaj, Esq.
Lovett & Gould
White Plains, NY
*Counsel for Plaintiff*

Howard M. Miller, Esq.
Jessica Christine Satriano, Esq.
Bond, Schoeneck & King, PLLC
Garden City, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiff Thomas Kempkes ("Plaintiff") brought this action pursuant to 42 U.S.C. § 1983,

alleging that the Village of Bronxville ("Bronxville") and the five individuals comprising

Bronxville's Board of Trustees ("Board Members") (collectively, "Defendants") violated his

First Amendment rights by terminating his employment as a police officer in retaliation for his

filing of a previous lawsuit against Defendants and the Bronxville police chief.  Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated herein, Defendants' motion is granted.

## I.  Background

For purposes of this Motion, the Court accepts as true all facts alleged by Plaintiff in his First Amended Complaint ("March 2008 Amended Complaint"), including those alleged in pleadings that Plaintiff filed in a prior action, *Kempkes v. Downey*, No. 07-CV-1298 ("First Action"), and annexed to his pleadings in the instant case ("Second Action").

### A.  Disciplinary Proceedings Against Plaintiff

According to Plaintiff's Complaint in the First Action ("February 2007 Complaint"), Plaintiff was an officer in the Bronxville Police Department ("Department").  (Feb. 2007 Compl. ¶ 3.)  Beginning on or about September 6, 2002, due to a job-related injury, Plaintiff received benefits pursuant to New York General Municipal Law § 207-c ("Section 207-c").  (*Id.*)  On July 7, 2006, Bronxville and its police chief revoked Plaintiff's Section 207-c status and terminated his Section 207-c benefits by written notice that Plaintiff was "'suspended without pay pending the investigation into potential disciplinary charges being pursued against [him] . . . related to [his] failure to remain at home, while injured, on Thursday July 6, 2006.'"  (*Id.* ¶ 6 (alterations in Feb. 2007 Compl.).)  On or about August 21, 2006, the police chief preferred disciplinary charges against Plaintiff.  (*Id.* ¶ 7.)

On December 13, 2006, the Board of Trustees ("Board") convened disciplinary proceedings against Plaintiff pursuant to New York Unconsolidated Law § 5711-q.  (Reply Aff.

of Howard M. Miller in Supp. of Mot. to Dismiss, Ex. 1 (Disciplinary Hr'g Tr. ("Tr.") 4).)[1]  Each

of the Board Members was present.  (*Id.*)  The Department's attorney, during his opening

statement, stated that Plaintiff (1) "failed to give notice to the Department of the need to leave

his home during a time when he was sick or injured and during his regular tour," (2) gave "false

and misleading information to a detective who had gone there to investigate his whereabouts,"

and (3) was guilty of "insubordination."  (*Id.* 9.)  The Department's attorney requested that

Plaintiff "be discharged for these offenses."  (*Id.* 11.)

During his opening statement, Plaintiff's counsel stated that he believed that charges had

been brought against Plaintiff in part because "he has repeatedly expressed his concern . . . that

the police department is systematically discriminating based on gender" and "has a racial bias."

(*Id.* 15.)[2]  Plaintiff's counsel asserted that the Department never hired a female or Hispanic

officer, and employed only one or two African-American officers.  (*Id.*)  He also asserted that

Plaintiff had "expressed concern" about disparate treatment of Hispanic and African-American

motorists by the Department.  (*Id.* 16-17.)  Plaintiff's counsel further asserted that Plaintiff had

"expressed concern" with respect to other actions taken by members of the Department, which

he said Plaintiff claimed put "public health and safety at risk," put "other officers at risk," and

"endangered the welfare of a minor."  (*Id.* 15-16.)

On December 21, 2006, Plaintiff wrote a letter to the Board Members.  (Feb. 2007

---

[1] The Court takes judicial notice of the complete record of the disciplinary proceeding against Plaintiff.  *See Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 348 (S.D.N.Y. 2007) ("[T]he Court may take judicial notice of th[e] record of [a relevant] disciplinary hearing . . . .").  Plaintiff does not dispute that this is proper.

[2] Plaintiff's attorney at the disciplinary hearing, Jonathan Lovett, is also representing Plaintiff in the two actions before this Court.

3

Compl. ¶ 9; Tr. 115.)  The letter stated:  "'I am writing to you exclusively in my capacity as a concerned and knowledgeable citizen.'"  (Feb. 2007 Compl. ¶ 9.)  The letter asserted that "'there has never been a female Police Officer and/or an Hispanic Police Officer employed by the Village,'" that "'there are but two African-American officers,'" and that "'our limited police resources are used to detain/prosecute Hispanic[] and African-American[]'" motorists in a manner different from "'Caucasian motorists.'" (*Id.*)  The letter added:  "'I propose that the Village . . . begin providing Equal Protection to all persons regardless of gender, ethnicity, national origin and/or skin color.'" (*Id.*)  Plaintiff's letter concluded with a request that the letter be included as "'part of the Village Board's official record at its upcoming public meeting.'" (*Id.*)

Plaintiff's disciplinary hearing was reconvened on January 4, 2007 (Tr. 113), at which time Plaintiff's December 21, 2006 letter was marked for identification (*id.* 117, 345).  The hearing continued for a third and final day, January 10, 2007.  (*Id.* 364, 434.)

B.  Plaintiff's First Action

With respect to the pay period ending February 2, 2007, Bronxville and the Board Members "reduced Plaintiff's net bi-weekly salary by approximately $570."  (Feb. 2007 Compl. ¶ 10.)

On February 21, 2007, Plaintiff commenced the First Action, alleging that Bronxville and its police chief violated Plaintiff's due process rights by terminating his Section 207-c benefits and reducing his salary (*id.* ¶¶ 13, 15), retaliated against Plaintiff in violation of the First Amendment by reducing his salary (*id.* ¶ 17) "[a]s a proximate result of Plaintiff's expression of concerns" about the Department (*id.* ¶ 10), and subjected Plaintiff to selective prosecution in

4

violation of the Equal Protection Clause by pursuing disciplinary charges against him (*id.* ¶ 19).

Plaintiff alleged that defendants' conduct "caused Plaintiff to suffer: pecuniary losses; a loss of

Section 207-c benefits; public humiliation; public embarrassment; emotional upset; anxiety;

punishment for the exercise of his rights to free speech and to petition government for the redress

of grievances; multiple property deprivations without benefit of a mandatory pre-deprivation

hearing; and [that Plaintiff] has otherwise been rendered sick and sore." (*Id.* ¶ 11.)  Plaintiff

sought compensatory and punitive damages.  (*Id.* ¶ 1.)

On March 27, 2007, Plaintiff filed a First Amended Complaint in the First Action

("March 2007 Amended Complaint"), which added the Board Members as defendants, omitted

Plaintiff's due process claims, and added three additional claims of retaliation in violation of the

First Amendment, alleging that the defendants retaliated against Plaintiff by pursuing

disciplinary proceedings against him (Mar. 2007 Am. Compl. ("Mar. 2007 AC") ¶ 19), by

depriving him of Section 207-c benefits (*id.* ¶ 21), and by denying health insurance coverage to

his wife (*id.* ¶ 23).  Plaintiff alleged that the "revocation of the 207-c benefits and preferral of the

disciplinary charges . . . were motivated at least in substantial respect by reason of Plaintiff's

pre-revocation and pre-hearing expression of . . . concerns" about the Department (*id.* ¶ 8), and

that the denial of health benefits to Plaintiff's wife was "a proximate result of Plaintiff's

reiteration of his said concerns both at the commencement of the disciplinary hearing and

thereafter" (*id.* ¶ 10).  The March 2007 Amended Complaint omitted Plaintiff's assertion that he

suffered "multiple property deprivations without benefit of a mandatory pre-deprivation hearing"

(Feb. 2007 Compl. ¶ 11), but otherwise asserted the same injuries as in the February 2007

Complaint (Mar. 2007 AC ¶ 12).

C.  Plaintiff's Closing Statement in Disciplinary Proceedings

By letter dated October 8, 2007, Plaintiff's counsel submitted to the Board's counsel a "closing statement" in the disciplinary proceedings against Plaintiff.  (Aff. of Howard M. Miller in Supp. of Mot. to Dismiss ("Miller Aff."), Ex. 2 (Letter of Jonathan Lovett to John F. O'Reilly, dated Oct. 8, 2007).)  The letter stated:  "I refer the Village Board to:  i) my opening statement in the disciplinary [hearing]; ii) my client's letter to the individual Board members which was marked as an exhibit at the hearing; and [iii]] the pending federal civil rights complaint."  (*Id.*) The letter added:  "I have zero confidence that . . . your clients will be fair in disposing of this matter.  They manifestly could care less [sic] that the Police Department . . . was overtly racist in enforcing the law . . . and racist/sexist with respect to staffing . . . ."  (*Id.*)

D.  Report and Recommendation in First Action

On October 12, 2007, following defendants' motion to dismiss the March 2007 Amended Complaint, Magistrate Judge George A. Yanthis issued a report and recommendation ("R&R") concluding that this Court should grant the motion to dismiss with respect to two of Plaintiff's three First Amendment claims and otherwise should deny the motion.  *See Kempkes v. Downey*, No. 07-CV-1298, 2008 WL 852765, at *2 (S.D.N.Y. Mar. 31, 2008).

E.  Termination of Plaintiff

On November 19, 2007, Plaintiff's employment with the Department was terminated "by a final administrative determination that was approved and signed by" the Board Members. (Mar. 2008 Am. Compl. ("Mar. 2008 AC") ¶ 10.)  The Board found Plaintiff "guilty" of seven of the eleven charges brought against him (Miller Aff. Ex. 3 (Decision of Board, dated Nov. 19, 2007, at 4-8)), and determined that because "[a]llowing [Plaintiff] to continue employment is

contrary to the Board's and Village's interest in maintaining public confidence and respect for the members of the Police Department, . . . the penalty imposed is dismissal" (*id.* 25). With respect to Plaintiff's allegations that the discipline taken against Plaintiff was due to concerns about the Department that Plaintiff had previously expressed, the Board stated:

> In his opening statement to the Board on the first day of the disciplinary hearing on December 13, 2006, Mr. Lovett on behalf of Officer Kempkes claimed that the disciplinary matter is related to concerns Officer Kempkes has purportedly expressed about gender, national origin and racial discrimination in employment practices in the Police Department. Mr. Lovett also claimed that the disciplinary charges are related to concerns Officer Kempkes has purportedly expressed about national origin and racial discrimination in law enforcement actions taken by the Police Department. Mr. Lovett also suggested that Officer Kempkes was the subject of discipline because he had expressed concerns about health and safety based on purported inaction on and/or cover up of misconduct committed by various other officers in the Police Department.
> There was no evidence provided to the Board showing in any manner that Officer Kempkes had expressed any of the concerns claimed by Mr. Lovett or to show any connection between the purported concerns and the disciplinary charges. Further, there was nothing produced during the hearing other than Mr. Lovett's words to show that any of the matters about which Officer Kempkes has purportedly expressed concern are anything other than the figment of someone's imagination concocted only for purposes of this disciplinary proceeding.

(*Id.* 22 (footnote omitted).)

F.  Plaintiff's Second Action

On December 18, 2007, Plaintiff initiated the instant Second Action, filing a Complaint ("December 2007 Complaint") alleging that Defendants terminated Plaintiff in retaliation for his filing of the First Action.  (Dec. 2007 Compl. ¶ 11.)  Plaintiff's First Amended Complaint, filed March 12, 2008, alleged that "[t]he termination of Plaintiff's employment was motivated in whole and/or in substantial respect to [sic] retaliate against Plaintiff for having filed [the First Action]" (Mar. 2008 AC ¶ 11), in violation of Plaintiff's First Amendment rights (*id.* ¶ 14). Plaintiff alleged that Defendants' retaliatory conduct caused Plaintiff to suffer "substantial

pecuniary losses; retaliation for having engaged in First Amendment protected conduct; public embarrassment; public humiliation; anxiety; emotional upset; and he has otherwise been rendered sick and sore."  (*Id.* ¶ 12.)  Plaintiff sought compensatory and punitive damages.  (*Id.* ¶ 1.)

### G.  Partial Dismissal of Plaintiff's First Action

As noted, Magistrate Judge Yanthis issued an R&R with respect to the First Action, wherein he recommended that the Court dismiss certain of Plaintiff's causes of action, including two of Plaintiff's First Amendment causes of action.  Plaintiff did not object to the R&R, but the defendants objected to those portions of the R&R recommending denial of their motion to dismiss Plaintiff's remaining claims.  On March 31, 2008, this Court issued an order largely adopting Magistrate Judge Yanthis's R&R.  The Court dismissed Plaintiff's selective prosecution claim, as well as his claims that defendants retaliated against Plaintiff by instituting disciplinary hearings against him and by revoking his Section 207-c benefits; and dismissed all claims against the Board Members.  *See Kempkes*, 2008 WL 852765, at *9.  The Court denied the motion to dismiss Plaintiff's claims that Bronxville and the police chief retaliated against Plaintiff by reducing his pay and denying health benefits to his spouse.  *See id.*

### H.  Motion to Dismiss the Second Action

On August 8, 2008, Defendants filed the instant Rule 12(b)(6) motion to dismiss the Second Action for failure to state a claim.  Defendants argue:  (1) that Plaintiff's claim of retaliatory termination is barred by collateral estoppel, because the Board decided that issue against Plaintiff during the disciplinary proceedings against him (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 5-11); (2) that the March 2008 Amended Complaint fails to state a

plausible claim of retaliation, because the filing of the First Action was not speech on a matter of public concern, and because Plaintiff failed to plead facts showing a causal connection between the filing of the First Action and Plaintiff's termination (*id.* 12-15); and (3) that the Board Members are entitled to immunity (*id.* 16-18). Plaintiff disputes each of these contentions. (Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Mem.").) The Court held oral argument on Defendants' motion on December 12, 2008.

## II.  Discussion

### A.  Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

9

*Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted) (second alteration in *Twombly*).  In *Twombly*, *see id.* at 1964-69, the Supreme Court abandoned reliance on the oft-cited line from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  As the Court explained in *Twombly*, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Twombly*, 127 S. Ct. at 1968 (alteration in *Twombly*).  Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 1969.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's [*Twombly*] opinion . . . , we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  (emphasis in original)).

B.  Collateral Estoppel

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give

10

state-court judgments the same preclusive effect as they would receive in courts of the same

state.  However, neither arbitrations nor administrative adjudications are state-court judgments

within the coverage of Section 1738.  Nonetheless, in federal actions based on 42 U.S.C. § 1983,

state administrative fact-finding is given the same preclusive effect as it would receive in courts

of the same state.  New York courts give quasi-judicial administrative fact-finding preclusive

effect where there has been a full and fair opportunity to litigate."  *Burkybile v. Bd. of Educ. of

Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005) (internal citations

omitted).  "Under New York law, collateral estoppel will preclude a federal court from deciding

an issue if (1) the issue in question was actually and necessarily decided in a prior proceeding,

and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate

the issue in the first proceeding."  *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal

quotation marks omitted).

According to Defendants, "Plaintiff specifically raised the determinative issue of First

Amendment retaliation in the prior disciplinary proceeding" (Defs.' Mem. 7), which was a

"'quasi-judicial' administrative proceeding" of the sort given preclusive effect by New York

courts (*id.* 9); because the Board "expressly determined that Plaintiff did *not* engage in any of the

alleged speech prior to the charges and disciplinary hearing as he claimed, and that the

disciplinary proceeding was not retaliation for Plaintiff's speech" (*id.* 8), "Plaintiff cannot now

argue that the conclusion of that disciplinary proceeding — *i.e.*, his termination — was

retaliatory" (*id.* 10).

Defendants' argument is unpersuasive.  First, the question at issue in this litigation —

whether Defendants terminated Plaintiff as retaliation for filing the First Action — is distinct

11

from the question of whether Plaintiff engaged, prior to the disciplinary proceedings, in protected speech, and of whether disciplinary charges were brought against Plaintiff in retaliation for that speech.  Plaintiff's First Action alleges, *inter alia*, that Defendants and Bronxville's police chief denied health benefits to Plaintiff's spouse in retaliation for criticisms of the Department made *subsequent* to the initiation of disciplinary action against Plaintiff.  *See Kempkes*, 2008 WL 852765, at *4-5 (denying motion to dismiss this claim).  Assuming *arguendo* that the Board did determine that Plaintiff did not engage, *prior* to the disciplinary proceedings, in protected speech, and that disciplinary charges were not brought against Plaintiff in retaliation for that speech, this would not preclude Plaintiff from asserting in this Second Action that Defendants terminated Plaintiff for stating a facially valid retaliation claim in the First Action.  Even if Plaintiff publicly criticized the Department for the very first time in December 2006, and the pre-termination disciplinary action against Plaintiff lacked retaliatory intent, that would not affect the facial validity of the retaliation claim stated in the First Action.  Assuming that filing such a claim could be speech on a matter of public concern, the First Action could give rise to the retaliation claim in the Second Action because it might have led Defendants to retaliate against Plaintiff by terminating him rather than imposing some lesser punishment.

Second, even if the issues Defendants claim were resolved by the Board in administrative proceedings were identical to the issues Plaintiff is litigating in this Second Action, the Board did not actually resolve those issues, nor was the resolution of those issues necessary to the Board's decision.  The Board's decision did not state that it definitively found that Plaintiff had not previously expressed his alleged concerns about the Department, but only that no evidence

had been presented showing that he had done so.  Moreover, even if the Board had actually determined that Plaintiff had never criticized the Department or that he had not been the victim of retaliation for voicing such concerns, it is unclear how that determination affected the Board's decision.  In its decision, the Board did not comment on Plaintiff's alleged criticisms and claims retaliation until the second-to-last paragraph of the 19-page section dealing with Plaintiff's guilt or innocence.  At that point, the Board had already discussed all eleven charges against Plaintiff and explained its findings with respect to each charge; at no point did it suggest that the Board had considered Plaintiff's assertions of retaliation to be relevant to its findings.[3]

Accordingly, the instant action is not barred by collateral estoppel.

---

[3] At oral argument, Defendants contended that *DeCintio v. Westchester County Medical Center*, 821 F.2d 111 (2d Cir. 1987), requires the conclusion that Plaintiff is estopped from bringing the instant claim.  This contention is without merit.  *DeCintio* involved a plaintiff's claim that he had been discharged in retaliation for previously filing a Title VII gender discrimination suit; defendants claimed that he had been fired, following a hearing pursuant to New York Civil Service Law § 75 ("Section 75"), for violating hospital policy.  821 F.2d at 112-13.  The Second Circuit held that collateral estoppel barred the plaintiff's 42 U.S.C. § 1983 retaliation claim because he had sufficient opportunity to litigate the issue of retaliation during his Section 75 hearing, and because he did litigate the issue in a subsequent proceeding before the New York State Division of Human Rights ("SDHR"), which concluded that there was no probable cause to support plaintiff's complaint of retaliation.  *Id.* at 118.  In *DeCintio*, despite plaintiff's assertion that "the Section 75 proceeding was almost exclusively concerned with whether the charges of misconduct levelled against him were true," the plaintiff "had an adequate opportunity to litigate the retaliation issue in his Section 75 hearing . . . in view of a provision of New York law which . . . established a prohibition against retaliatory action by public employers, which prohibition could be asserted as a defense in a Section 75 proceeding." *Id.* at 116.  Moreover, the plaintiff "admit[ted] to having 'fleshed out' the issues [of retaliation] at the SDHR hearing," *id.* at 118, which was resolved against him.  In the instant case, there is no admission by Plaintiff that the retaliation claim underlying the Second Action was litigated during the disciplinary proceeding, and no suggestion that Plaintiff could have defeated the disciplinary charges against him by asserting that they were motivated by retaliation.  Indeed, while the plaintiff in *DeCintio* claimed retaliation for his prior Title VII discrimination claim, Plaintiff here claims retaliation for his filing of the First Action — an event that had not yet transpired at the time of his disciplinary proceeding and therefore could not have been litigated there.

C.  First Amendment Retaliation

"To establish a First Amendment retaliation claim, a plaintiff must show:  (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action."  *Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008).  Defendants contend that the alleged basis of Plaintiff's retaliation claim — Plaintiff's filing of the First Action — was not speech addressing a matter of public concern.

In *Ruotolo v. City of New York*, the plaintiff police officer filed a free speech retaliation action in federal court, and subsequently amended his complaint to add a claim that defendants retaliated against him further for bringing the retaliation lawsuit itself.  The Second Circuit affirmed the Rule 12(b)(6) dismissal of this last claim, holding that the plaintiff's claim "must fail because his lawsuit did not address a matter of public concern."  *Rutolo*, 514 F.3d at 188. The court looked to the plaintiff's complaint and noted that the alleged acts of retaliation "bear upon the circumstances and perquisites of his employment, such as reassignment, transfer, time off, and discipline," that the alleged retaliation resulted in "adverse career, financial and emotional effects that [the plaintiff] suffered personally," and that the "relief sought is also almost entirely personal to [the plaintiff]."  *Id.* at 190.  The *Ruotolo* court concluded that though the plaintiff's complaint "accuses the City of routinely tolerating the violation of whistleblower rights, and seeks punitive damages to deter 'future illegal and retaliatory conduct,' arguably hinting at some broader public purpose," this was not enough to "br[ing] within the protection of the First Amendment" "retaliation against the airing of generally personal grievances."  *Id.*

This case is similar to *Ruotolo*, except that Plaintiff, rather than amending his initial

14

retaliation complaint to allege additional retaliation for the act of filing the complaint, instead brought the instant claim as a separate action.  Following *Ruotolo*, the Court looks to the First Action to determine whether that lawsuit addressed a matter of public concern.[4]

Plaintiff alleged in his February 2007 Complaint that Bronxville and its police chief violated Plaintiff's due process rights by terminating his Section 207-c benefits and by reducing his salary (Feb. 2007 Compl. ¶¶ 13, 15), retaliated against Plaintiff in violation of the First Amendment by reducing his salary (*id.* ¶ 17), and subjected Plaintiff to selective prosecution in violation of the Equal Protection Clause by pursuing disciplinary charges against him (*id.* ¶ 19). Plaintiff alleged that this conduct "caused Plaintiff to suffer: pecuniary losses; a loss of Section 207-c benefits; public humiliation; public embarrassment; emotional upset; anxiety; punishment for the exercise of his rights to free speech and to petition government for the redress of grievances; multiple property deprivations without benefit of a mandatory pre-deprivation hearing; and [that Plaintiff] has otherwise been rendered sick and sore." (*Id.* ¶ 11.) Plaintiff sought compensatory and punitive damages for these harms to him. (*Id.* ¶ 1.) Plaintiff's March 2007 Amended Complaint added the Board Members as defendants, omitted Plaintiff's due

---

[4] Plaintiff has not made clear in the Second Action if he is alleging that Defendants retaliated against him for filing the February 2007 Complaint, filing the March 2007 Amended Complaint, or both.  In the Second Action, both Plaintiff's December 2007 Complaint and his March 2008 Amended Complaint noted Plaintiff's prior filing of the First Action and stated that "[a] copy of *the* complaint in that law suit is annexed hereto and made a part hereof" (Dec. 2007 Compl. ¶ 5; Mar. 2008 AC ¶ 5) (emphasis added), but the December 2007 Complaint attached the March 2007 Amended Complaint while the March 2008 Amended Complaint attached the February 2007 Complaint.  Both the December 2007 Complaint and the March 2008 Amended Complaint allege that Defendants terminated Plaintiff's employment in order "to retaliate against Plaintiff for his having filed [the First Action]."  (Dec. 2007 Compl. ¶ 11; Mar. 2008 AC ¶ 11.) As it does not impact the ultimate result, the Court will assume *arguendo* that Plaintiff's March 2008 Amended Complaint alleged retaliation both for the filing of the February 2007 Complaint and for the filing of the March 2007 Amended Complaint.

process claim, and added three additional claims of retaliation in violation of the First Amendment, alleging that defendants retaliated against him by pursuing disciplinary proceedings against him (Mar. 2007 AC ¶ 19), by depriving him of Section 207-c benefits (*id.* ¶ 21), and by denying health insurance coverage to his wife (*id.* ¶ 23).  The March 2007 Amended Complaint alleged no additional injuries and sought no additional remedies beyond those sought in the February 2007 Complaint.  (Mar. 2007 Compl. ¶¶ 1, 12.)

It is clear that Plaintiff's First Action is "generally personal" within the meaning of *Ruotolo*.  In the First Action, all of defendants' alleged retaliatory and otherwise adverse acts — salary reduction, deprivation of employment benefits, and disciplinary action against Plaintiff — related to Plaintiff's employment.  Plaintiff did not allege that anyone other than himself suffered the effects of defendants' acts.  Indeed, Plaintiff neither sought non-monetary remedies nor alleged that he sought any relief in order to deter future adverse acts by defendants against others.  Thus, the First Action was not speech on a matter of public concern.

Plaintiff argues that the pre-*Ruotolo* case of *Konits v. Valley Stream Central High School District*, 394 F.3d 121 (2d Cir. 2005), requires the opposite conclusion.  (Pl.'s Mem. 8.)  In *Konits*, the plaintiff filed a lawsuit alleging that her employer retaliated against her after she helped a co-worker file a gender discrimination action against the employer.  *See Konits*, 394 F.3d at 123.  After the plaintiff's retaliation suit settled, she filed another action alleging that her employer retaliated against her for filing her first retaliation suit.  *See id.* at 123-24.  The Second Circuit reversed the district court, which had awarded summary judgment to the employer on grounds that the plaintiff's first retaliation suit was not speech on a matter of public concern.  *See id.* at 123.  The Second Circuit noted that the plaintiff alleged that she had been identified as a

16

witness for her co-worker in the co-worker's lawsuit against the employer, and concluded: "Because [the plaintiff's first] lawsuit was predicated on speech about gender discrimination against a fellow employee that directly implicated the access of the courts to truthful testimony, we cannot agree with the district court that it 'centered around issues solely related to [her] personal dissatisfaction with the terms and conditions of her employment.'" *Konits*, 394 F.3d at 125-26 (second alteration in *Konits*).

     *Konits* is not on all fours with this case, as Plaintiff's First Action did not involve allegations that Plaintiff had suffered retaliation for offering sworn testimony concerning matters of public concern; the First Action alleged that Plaintiff was retaliated against for prior "expression of . . . concerns" regarding the police department (Mar. 2007 AC ¶ 8), and there was no suggestion that Plaintiff would be involved in any litigation (other than the First Action itself).  Arguably, the *Konits* court might have reached the much broader conclusion that if a plaintiff states a claim for First Amendment retaliation, any subsequent lawsuit by that plaintiff alleging retaliation for filing her initial retaliation claim will necessarily satisfy the "public concern" requirement.  *See Konits*, 394 F.3d at 126 ("The motive of [the plaintiff] in speaking out on [her co-worker's] behalf," i.e., in performing the speech that led to the initial alleged retaliation, "was not to 'redress personal grievances' but rather 'had [the] broader public purpose' of assisting [the co-worker] to redress [the co-worker's] claims of gender discrimination.  We therefore hold that the [plaintiff's first retaliation] lawsuit," i.e., the alleged basis for the plaintiff's second retaliation lawsuit, "was speech on a matter of public concern." (third alteration in *Konits*) (internal citation omitted)); *Ruotolo v. City of New York*, No. 03-CV-5045, 2006 WL 2033662, at *5 (S.D.N.Y. July 19, 2006) ("*Konits* 'strongly suggests that where

17

a lawsuit is "predicated" on speech that is plainly a matter of public concern (in other words, where a lawsuit adequately charges a First Amendment retaliation claim), the lawsuit itself, seeking redress for the First Amendment violation, should be deemed to constitute speech on a matter of public concern as well.'" (quoting opinion of magistrate judge)).

The Court rejects the contention that this broad interpretation of *Konits* trumps the Second Circuit's *Ruotolo* decision. *Ruotolo* dictates that when a plaintiff alleges retaliation for the prior filing of a retaliation complaint, whether the initial retaliation complaint is speech on a matter of public concern depends on the scope of the alleged retaliatory acts, the alleged effects of those acts, and the nature of the relief sought. As Chief Judge Jacobs put it: "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d at 189 (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)). Here, as noted above, Plaintiff's First Action sought only to redress Plaintiff's personal grievances that he claimed were the product of unlawful retaliation.

Moreover, there is reason to believe that *Konits* did not actually rely on the broader holding described above. Although *Konits* described the plaintiff's filing of her initial retaliation lawsuit as the speech for which she allegedly suffered additional retaliation, the court apparently construed the plaintiff's complaint as alleging that her original speech (assisting her co-worker) also spurred the later retaliation against her: "In essence, [the plaintiff] argues that she was subjected to *ongoing retaliation as a result of her assistance* to [her co-worker] — retaliation that did not end with the settlement of her first action but that continued until at least the time she filed her second action. Thus, if [the plaintiff's first] lawsuit addressed a matter of public

18

concern, the public concern requirement would be met for her current lawsuit as well." *Konits*, 394 F.3d at 124 (emphasis added). *Konits* therefore need not stand for the proposition that merely filing a complaint that states a claim of First Amendment retaliation — a complaint seeking to prove that the plaintiff was punished for speaking, not that what she was saying was true — is always speech on a matter of public concern for purposes of a subsequent retaliation claim. Indeed, such a rule would permit plaintiffs alleging retaliation repeatedly to file new complaints (or add claims to their old complaints), bootstrapping each successive retaliation claim on the last one. It is difficult to accept the notion that the filing of a lawsuit alleging retaliation for the filing of a retaliation lawsuit alleging retaliation for the filing of a retaliation lawsuit automatically constitutes speech on a matter of public concern so long as the very first lawsuit stated a claim for retaliation, where the action otherwise only vindicates a plaintiff's purely parochial interests.

Accordingly, the Court follows *Ruotolo* and finds that Plaintiff's Second Action fails to state a claim for relief because the filing of Plaintiff's First Action — the sole basis for the retaliation alleged in the Second Action — was not speech on a matter of public concern.[5]

D. Immunity

In light of the foregoing, the Court need not consider Defendants' argument that Plaintiff's claims against the Board Members must be dismissed because the Board Members are entitled to immunity.

---

[5] It is therefore unnecessary for the Court to consider Defendants' alternative argument that the March 2008 Amended Complaint fails to allege a plausible causal connection between the filing of the First Action and Plaintiff's termination.

### III. Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted.  The Clerk of

Court is respectfully directed to terminate the pending motion (Dkt. No. 17), to dismiss the First

Amended Complaint, to enter judgment in favor of Defendants, and to close this case.


SO ORDERED.

Dated:          December 19, 2008
                White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

20

Service List (By ECF):

Jonathan Lovett, Esq.
Lovett & Gould
222 Bloomingdale Road, Suite 305
White Plains, NY  10605
jlovett@lovett-gould.com

Drita Nicaj, Esq.
Lovett & Gould
222 Bloomingdale Road, Suite 305
White Plains, NY  10605
dnicaj@lovett-gould.com

Howard M. Miller, Esq.
Bond, Schoeneck & King, PLLC
1399 Franklin Avenue, Suite 200
Garden City, NY  11530
hmiller@bsk.com

Jessica Christine Satriano, Esq.
Bond, Schoeneck & King, PLLC
1399 Franklin Avenue, Suite 200
Garden City, NY  11530
jsatriano@bsk.com

21